Parker and others agt. The City of Williamsburgh.

---

## SUPREME COURT.

JOHN S. PARKER and others agt. THE CITY OF WILLIAMSBURGH.

Where an *attorney* has been retained, and has appeared in the action, the party will not be allowed to revoke his authority and appoint a new one *without an order of the court*, or of a *judge at chambers, duly entered in the minutes of the court.*

And this rule applies to *all suitors* without distinction, artificial as well as natural persons—*corporations* and individuals must observe it at their peril.

Municipal corporations, having a law department created by their charter, and an attorney and counsel elected or appointed for a given period of time, are no exceptions to the rule.

Without the usual *order* of substitution entered, and without the usual *notice* of substitution *served*, the adverse party will be entirely justified in treating only with the attorney who first appeared in the action.

*Kings Special Term, Sept.,* 1856.
MOTION to dismiss an appeal.
The facts are fully stated in the opinion of the court.

JOHN A. LOTT & GEO. STEVENSON, *for motion.*
R. C. BRAINARD & N. F. WARING, *opposed.*

BROWN, Justice.   At the common law, a party could not appear and prosecute and defend in a court of law by attorney, without a special warrant by writ, or letters patent.   In this

Parker and others agt. The City of Williamsburgh.

state the right to appear by attorney is recognized by the constitution, and the manner of the appointment and the powers, duties and obligations of the attorney, are all regulated by the statute, and the rules and practice of the court. He is regarded as an officer of the court, performing important functions in the administration of justice, and his acts and conduct in the prosecution and defence of actions are subject to the control of the court, to which he is at all times amenable by summary proceedings.

When an attorney has been retained, and has appeared in the action, the party will not be allowed to revoke his authority and appoint a new one, without an order of the court, or of a judge at chambers. The observance of this rule is indispensable, to preserve order and regularity in the proceedings; for otherwise they would fall into confusion.

The application to change the attorney with his own consent, or against his will, upon the usual terms, would not, I apprehend, be denied; but it is, nevertheless, necessary that the order for the change, and the substitution of another in his place, should be duly obtained, and entered in the minutes of the court.

There is another person to be affected by the transaction, and that is the adverse party. He is concerned to know that the change has been made, and who is to represent the party making it thereafter; and this he can only know by a notice that the substitution has been effected in such form as shall make it valid. Without this notice, he could not safely serve his papers upon the substituted attorney, and treat him as the real representative of the party. Without the usual order and the usual notice, the party will be entirely justified in treating only with the attorney who first appeared in the action.

The rule to which I refer applies to all suitors without distinction, artificial as well as natural persons—corporations and individuals must observe it at their peril. Municipal corporations, having a law department created by their charter, and an attorney and counsel elected or appointed for a given period of time, are no exceptions to the rule.

The popular elections, or the vote of the common council, is nothing more than the mode prescribed by law to express the will of the suitor that his attorney should be changed. It does not, *ipso facto*, make the change. Neither the courts nor the adverse parties are bound by the new election or the new appointment alone. To give effect to the will of the municipal body thus expressed, and impose upon others the obligation to recognize it, the customary proceedings must be taken, otherwise the adverse party is not bound; nor indeed is he at liberty to recognize and give effect to the change, but must proceed to serve his papers upon the attorney who first appeared.

If a suitor, prosecuting a claim against the city of Brooklyn, or Williamsburgh, is bound to take notice that the head of its law department has been changed by a popular election, or a vote of the common.council, the same rule must obtain in regard to every city and village corporation throughout the state, having a law department by its charter, wherever the adverse party may reside, or whoever he may be. The consequences of such a practice are too obvious to need to be particularly named.

The present action was commenced against the city of Williamsburgh, before its union and consolidation with the city of Brooklyn. John Dean, Esq., who was the attorney and counsel for the corporation of Williamsburgh, elected for two years, under § 11 of title 3 of the act to incorporate the city of Williamsburgh, passed April 7, 1851, appeared for the defendant in the action. His term of office expired on the first of January, 1856, at which time Williamsburgh and Brooklyn had become united under one municipal government. Nathaniel F. Waring, Esq., was the attorney and council of the city of Brooklyn, appointed pursuant to § 18 of title 3 of the act " To consolidate the cities of Brooklyn and Williamsburgh and the town of Bushwick into one municipal government, and to incorporate the same," passed April 17, 1854. The action was tried before William Kent, Esq., referee, whose report in favor of the plaintiffs for $22,349.85 was filed, and judgment entered thereon against the defendant on the 27th day of February,

Parker and others agt. The City of Williamsburgh.

1856. Notice of the entry of the judgment was duly served on the 29th day of February, 1856, upon John Dean, Esq., the attorney for the defendant, who gave a written admission of the due service thereof, which is annexed to the motion-papers.

On the 9th day of June thereafter, Mr. Waring, the attorney and counsel of the city of Brooklyn, served upon the attorney for the plaintiffs notice of appeal from the judgment entered in the action. From the time of the commencement of the action in June, 1854, until the time of the service of this notice of appeal, no attorney had appeared but John Dean; no order for the substitution of any other had been entered, and no notice given to the attorney for the plaintiffs, that any other person than Mr. Dean claimed, or was thought to be the attorney for the defendant.

The plaintiffs had a right to accelerate the proceedings in the action to their final termination, by every rightful means at their command. They had a clear legal right to give notice of the entry of the judgment, and thus put the defendant to exercise its right of appeal within the time prescribed by law, or be for ever thereafter excluded from its exercise.

Upon whom were they to serve the notice? Not, surely, upon Mr. Waring—he was the attorney of the city of Brooklyn, for all the purposes contemplated by the charter, and in virtue of his position, might and would have been substituted in the place of Mr. Dean, as the attorney in this action, had he taken the trouble ,to enter the proper order and give the proper notice. But, until this was done, he was not the attorney upon the record. Mr. Dean still remained the attorney upon the record, and the plaintiffs could not with any safety treat with any other but him. He alone was entitled to notices in the progress of the action, which were to affect the rights of the defendant, and notices served upon Mr. Waring, or any other person, so long as Mr. Dean remained unchanged upon the record, would have been utterly void.

I am of opinion the plaintiffs were entirely right in their practice, and entitled to all the benefits of their diligence and

activity. I do not regard the order made by Mr. Justice Rock-well, on the 7th July, 1856, as affecting the question of the regularity of the appeal. The twenty days therein given the defendant to perfect its appeal, is given upon the assumption that an appeal had been regularly taken, which was imperfect for the want of a case or bill of exceptions.

The motion to set aside the appeal is granted, with $10 costs.