BALDWIN & JAYCOX *vs.* THE MAYOR, &C. OF THE CITY OF
NEW YORK.

42b 549
55ad482

It belongs to the inherent, essential powers of the supreme court to exercise
so efficient a control over every proceeding in an action as effectually to
protect every person, actually interested in the result, from injustice and
fraud. It will not allow itself to be made the instrument of wrong, no
less on account of its detestation of every thing conducive to wrong, than
on account of that regard which it should entertain for its own character
and dignity.

This power should indeed be regulated by a sound discretion, and exercised
with the utmost caution. Rules, orders and decisions, deliberately made,
should not be lightly disturbed.

As a general rule, none but parties to an action, and the attorneys on the
record, will be allowed to meddle with its management, or will be recog-
nized as having any standing in court in relation to it.

But this rule must yield when extraordinary circumstances of neglect, col-
lusion, or even mistaken opinions, honestly entertained by agents, have
produced gross and palpable wrong.

·The provision, in the act of April 24, 1863, (*Laws, p.* 409,) declaring that the
head of the law department, of the city of New York, shall have the
exclusive right to appear for the mayor, &c. in all motions, actions and
proceedings, is not a repeal of the fifth section of the act of April 19, 1856.
(*Laws, p.* 1127.)

The provision in the act of 1863 is unconstitutional and void, because it is a
subject entirely distinct from the subject of the act, and is not expressed
in the title.

The fifth section of the act of 1859 is constitutional, because it is incidental
to the main purpose of the act.

Where, after it had been repeatedly decided by the supreme court that
B. & J. had no right to recover damages against the city of New York,
for its failure to award to them a contract for building certain gate-houses,
because the city had made no contract, but on the contrary had expressly
refused to make any, the legistature, by an act passed in 1860, undertook
to recognize the claim of B. & J. and declare that the damages they had
sustained might be ascertained by three arbitrators to be appointed as
prescribed in the act; *Held* that the legislature had no right to interfere
with, or adjudicate upon the claim of B. & J. upon the city in this man-
ner; and that the act in question, so far as it related to this subject, was
unconstitutional, and every proceeding under it utterly void.

Both individuals and corporations are entitled to have their liabilities deter-
mined by due process of law, and to have claims for damages ascertained
by a jury, according to the course of the common law. This is a right
guarantied by the constitution; and any attempt of the legislature to
ignore that right is nothing more or less than usurpation.

MOTION by the comptroller of the city of New York to vacate a judgment rendered in this action, in June, 1863, against the defendants for over $70,000 damages, for their failure to award to the plaintiffs the contract for building the new reservoir gate-houses, for which contract they claimed to be the lowest bidders.

*L. R. Marsh,* for the plaintiffs.

*Wm. Fullerton* and *Henry E. Knox,* for the defendants.

CLERKE, J. It is scarcely necessary to reiterate, at any length, what this court, at general term in this district, took occasion emphatically to assert, (*Lowber* v. *The Mayor, &c.* 5 *Abb.* 487,) that it belongs to the inherent essential powers of this court to exercise so efficient a control over every proceeding in an action as to effectually protect every person actually interested in the result, from injustice and fraud, and that it will not allow itself to be made the instrument of wrong, no less on account of its detestation of every thing conducive to wrong than on account of that regard which it should entertain for its own character and dignity. This power, as was then declared, should indeed be regulated by a sound discretion and exercised with the utmost caution. Rules, orders and decisions, deliberately made, should not be lightly disturbed. As a general rule, none but parties to an action and attorneys on the record will be allowed to meddle with its management, or will be recognized as having any standing in court in relation to it. But this rule must yield when extraordinary circumstances of neglect, collusion, or even of mistaken opinions, honestly entertained, on the part of agents, have produced gross and palpable wrong. Courts of justice will, in such cases, be as zealous and vigilant in rectifying wrongs so produced, as in rectifying the acts of a trustee, by which the interests of a trust may be injuriously affected. In the case of *Parker and others* v. *The City of*

Baldwin *v.* Mayor, &c. of New York.

*Williamsburgh,* (13 *How. Pr. Rep.* 250,) the court did not, in the slightest degree, recede from this position. The substance of the decision in that case is, that where an attorney has been retained, and has appeared in the action, the party will not be allowed to revoke his authority and appoint a new one, without an order of the court, or of a judge at chambers, duly entered in the minutes of the court; and, consequently, without the usual order of substitution entered, and without the usual notice of substitution served, the adverse party will be entirely justified in treating only with the attorney who first appeared in the action. The only question was, whether a notice of appeal from a judgment should have been served by the attorney and counsel of the city of Brooklyn, whose term of office commenced after the union of Williamsburgh and Brooklyn, and long after the commencement of the suit, or should it have been served by the gentleman who was the attorney and counsel of the defendants when the suit was commenced, and who was the attorney on the record until after the time of the service of the notice of appeal, no order for the substitution of any other having been entered. This was a mere question of the regularity of the service of a notice, and involved no question of flagrant wrong, or gross mistake or neglect, in the prosecution of the suit, or in the recovery of the judgment. It was not pretended that the court was, by deliberate fraud of the plaintiffs, or the palpable inadvertence of the defendants' attorney, made the instrument of injustice.

I agree with the counsel of the comptroller, that the provision of the act of 1863,(*a*) declaring that the head of the law department of the city of New York shall have the exclusive right to appear for the mayor, &c. in all motions, actions and proceedings, is not a repeal of the 5th section of the act of 1859.(*b*) The one is unconstitutional and void, because it is a subject entirely distinct from the subject of the act, and is not expressed in the title; the other is constitu-

(*a*) Laws of 1863, p. 409.     (*b*) Laws of 1859, p. 1127.

tional, because it is incidental to the main purpose of the act. "It is not" as is mentioned in the opinion of the court in *Sharp* v. *The Mayor, &c.* (9 *Abb.* 249,) "a different subject, but a provision, by which the city authorities, before paying the moneys to be raised by tax, should have the means of ascertaining that the judgments so to be paid were actually due." One of the principal purposes of this act was to raise money to satisfy certain judgments recovered against the city. The comptroller is the financial officer through whose agency this money was to be applied to the proper object; and it was, therefore, manifestly incidental to this purpose, and in furtherance of it, that the comptroller should have the authority which the 5th section of the act gives him. In the act of 1863, the provision giving the exclusive right to the head of the law department to appear and represent the mayor, &c. in all motions, actions and proceedings, is introduced, or, I should rather say, foisted into the first section, after the enumeration of a long list of appropriations, and immediately after the appropriation for the salaries of the law department, with which this attempted repeal of an authority, given by the act of 1859 to the comptroller, has no legitimate connection. In short, it is a subject evidently distinct and separate from the subject of the act, and of the section into which it is so conspicuously interpolated.

II. Having disposed of this preliminary question, there can be little difficulty in relation to the merits. The legislature and the courts have been, both alike, audaciously and preposterously, made the instruments of flagrant injustice. It has been repeatedly decided by this court that the plaintiffs had no right to damages against the city, because the city had made no contract; but, on the contrary, through the positive action of the proper authority, emphatically refused to make any such contract. Notwithstanding this, by an act passed in 1860, entitled "An act to facilitate the acquisition of land for a junction gate-house, &c. and to provide for

the settlement of claims connected therewith," the legislature undertake to recognize this claim, and declare that the damages may be ascertained by three arbitrators, to be appointed as the act prescribes. This the legislature had no more right to do than to recognize a claim against me on an alleged contract, and to appoint arbitrators to ascertain the amount of damages. It has no more right to interfere with, or adjudicate upon any claims against the corporation of the city of New York, or any other artificial person, than it has to interfere with, or adjudicate upon, any claims against a natural person. One is as absolutely entitled as the other to have its liabilities determined by due process of law, and to have claims for damages ascertained by a jury, according to the course of the common law. This is a right guarantied by the constitution; and the attempt by any legislation to ignore that right is nothing more or less than usurpation. I suppose the framers of the act of 1860 had in view the cases of the *Town of Guilford* v. *Supervisors of Chenango,* (18 *Barb.* 615; 3 *Kern.* 143;) *The People* v. *The Supervisors of New York,* (11 *Abb.* 114;) and many other similar cases. But, as this court at general term in *The People* v. *Haws,* in animadverting on this very act in question, say: "These cases related not to the right or power of the legislature to compel an individual or corporation to pay a debt or claim;" but they related to the power of the legislature to raise money by tax for services rendered to the state, or any county of the state, and to apply such money, when raised, to the payment of those services. In *The People, on the relation of McSpedon and Baker* v. *Haws,* (21 *How. Pr. Rep.* 178,) nothing more was decided than that where work was actually done, and the legislature had determined that the work was a service rendered to the county, they had a right to tax the inhabitants of that portion of the state to pay for it, without requiring the board of supervisors to audit the claim, or compelling any proceedings against them.

Under this view of the case, it is unnecessary to consider

whether the appointment of the arbitrators, and other proceedings, were regular. The act of 1860, so far as it relates to the subject under consideration, being unconstitutional, every proceeding in pursuance of it is utterly void.

·The judgment must be vacated, and all proceedings under it, together with the order of reference, must be vacated. $10 costs of motion.

[New York Special Term, December 12, 1864. *Clerke*, Justice.]