## SUPREME COURT.

WILLIAM BALDWIN and JOHN M. JAYCOX, appellants agt. THE MAYOR, &c., OF THE CITY OF NEW YORK, respondents.

The provision in the *fourth section* of the act passed April, 1860 (*Sess. Laws* 1860, *p.* 772), for ↄhe appointment of *arbitrators*, and for an *arbitration*, directing that it shall be held for the purpose of adjusting and determining the damages which the contractors, to whom the gate houses and aqueducts were awarded by the Croton Aqueduct board on the 27th October, 1858, might be equitably entitled to recover of the city of New York, and if an award made in their favor, directing the comptroller to pay the same, is *unconstitutional*, as violating the provisions of the 1st and 6th sections of the constitution. (*Affirming the argument and decisions in this case in* 37 *Barb.* 440; 24 *How. Pr. R.* 148, INGRAHAM, *J.; and* 42 *Barb.* 549, CLERKE, *J.*)

WELLES, *J., dissenting.* Holding that such act was constitutionally valid, for the reason,

1st. That it was assented and agreed to by all the parties interested therein, and that the voluntary arbitration which followed was binding upon the city.

2d. That the law after its passage had been adopted and acted upon by the head of the city government, in writing with the plaintiffs, in creating and organizing the board of arbitration.

3d. That the city authorities have availed themselves of so much of the act and of the 4th section as was beneficial to the city.

4th. By the passage of the act for the tax levy of the city of New York, April 25, 1864, providing and appropriating for "judgments recovered against the city $174,000," of which the judgment in favor of the plaintiffs was one, which act was passed upon the application of the comptroller of the city, and founded upon the budget by him laid before the legislature as the basis thereof.

5th. The defendants are a *municipal corporation*, constituting a branch or portion of the government of the state, as applied to the city of New York, invested with certain legislative, municipal and administrative powers, as defined in its charter, which is a grant of political power, creating a civil institution to be employed in the administration of the government, and being for *public advantage*, is to be governed according to the laws of the land.

As it derives its existence and all its powers from the legislature, and holds all its franchises in subordination to the power which creates it, and subject at all times to legislative interference and control, the legislature may constitutionally direct in relation to its property as perfectly as it can dispose of property owned by the state, as such.

When the state interferes in an act of government, as a question or power the people of the whole state represented by their legislature, become the only party besides the plaintiffs; it was therefore competent for it to pass this law, without the assent of the city or its corporation (*Darlington* agt. *The Mayor, &c., of New York*, 28 *How. Pr. R.* 352).

*New York General Term, November*, 1865.

*Before* INGRAHAM, *P. J.,* CLERKE *and* WELLES, *Justices.*

THE order appealed from vacates and sets aside a judgment in the action entered June 13th, 1863, and all proceedings thereunder, together with the order of reference entered in said action on the 27th day of February of that year, and all proceedings thereunder, with $10 costs of the motion. This order (the one appealed from) was made in pursuance of an order at special term, held in the first district on the 24th day of August, 1864, before Mr. Justice J. F. BARNARD, founded upon certain affidavits and other papers referred to, on motion of counsel employed by the comptroller of the city of New York, under the fifth section of the act of the legislature, entitled "an act to enable the supervisors of the city and county of New York to raise money by tax," passed April 19th, 1859 (*chap.* 489, *pp.* 1123, 1127), and required the plaintiffs to show cause at a special term to be held at the city hall of said city, on the first Monday of September then next, at eleven o'clock A. M., or as soon thereafter as counsel could be heard, why the judgment in the action and the execution theretofore issued thereon, and all proceedings thereunder, and the report of the referee and the order of reference therein, should not be vacated and set aside, and why the defendants should not be permitted to come in and defend said action, and why the defendants should not have such other or further relief as to the court might seem meet, with costs of the motion. The order to show cause, directed that in the meantime, and until the decision and entry of the order of the court upon the motion, all proceedings on the judgment and execution, and the levy thereunder, be, and the same were, thereby stayed. The decision upon this order to show cause, was postponed from time to time, until November 30th, 1864, when the order appealed from was made. The action was brought to recover from the defendants the amount of an award of three arbitrators,

alleged to have been chosen under and in pursuance of the fourth section of the act of the legislature, passed April 16th, 1860, entitled "an act to facilitate the acquisition of land for a junction gate-house, and to connect the same with the new reservoir and the city mains in the city of New York, and to provide for the settlement of claims for damages connected therewith " (*Laws of* 1860, *chap.* 449, *pp.* 772-3 *and* 4).

LUTHER R. MARSH, *for appellants.*
WILLIAM FULLERTON, *for respondents.*

By the court, INGRAHAM, P. J.   The question raised in this case as to the power of the legislature to pass the act directing the arbitration therein, has been fully examined by CLERKE, Justice, at special term in this case (42 *Barb.* 549), and by myself in *The People ex rel. Baldwin and Jaycox* agt. *Haws* (37 *Barb.* 440; *S. C.* 24 *How.* 148). It is unnecessary to reiterate in an opinion here the views then expressed.   The conclusions arrived at in those decisions have not been changed, and we refer to those decisions as containing our opinions on the questions now under discussion.

The opinion of DENIO, C. J., in *Darlington* agt. *The Mayor* (28 *How.* 352), contains much not at all necessary to the decision of that case, and the unlimited power claimed in that opinion for the legislature, over the property of municipal corporations, should be authoritatively declared in a case which would make it binding as an authority before it is adopted as law, removing, as in this case, all the protection which the constitution has given to rights to private property and to a trial by jury, in cases of disputed claims. I cannot concur in the views expressed by Judge WELLES in this case, without abandoning all the rules heretofore adopted for the protection of municipal corporations in

their franchises and property, until a direct decision on these points shall have been made by a higher tribunal.

The order appealed from should be affirmed.

CLERKE, J., concurred.

WELLES, J., *dissenting*. The plaintiffs have interposed several preliminary objections to the motion, one of which is, that it was irregular for the comptroller to make, and, therefore, irregular for the special term to entertain it, for the reason that the fifth section of the act of 1859, under which the motion was made and decided, is in contravention of section 16, of article 3 of the constitution, which provides that " no private or local bill which shall be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." This objection, it seems to me, cannot be sustained. The provisions of the section in question were incidental to the principal subject of the act as expressed in the title, which was to enable the supervisors to raise money by tax.

The legislature, for the purpose of determining the aggregate amount to be annually raised by tax in the city and county of New York, must necessarily rely for its data upon information derived mainly from the comptroller, who is the head of the department of finance in the city government. Among other items of his budget to be laid before the legislature, there is generally one for judgments recovered against the corporation. Except for the section of the statute of 1859 in question, it would be his duty to include all such judgments, and of the legislature to provide for the payment of them all, in the amount authorized to be levied, without reference to the question whether they had been obtained by collusion, or were founded in fraud. The section under consideration was intended to furnish a remedy for this evil, and declares that whenever the comptroller shall have reason to believe that any judgment then of record against the city, or which might be thereafter obtained, should have been obtained by collusion

or founded in :fraud, he was authorized and required to take all proper and necessary means to open and reverse the same, and to use the names of the mayor, aldermen and commonalty, and to employ counsel for such purpose. If the comptroller, in the exercise of the power conferred by this section, should succeed in opening or reversing any judgment or judgments against the city, the gross amount to be raised by the statute for the tax levy would be thereby proportionally reduced. . The question of the validity of this section, in view of the section of the constitution referred to, has been the subject of judicial consideration, and its validity affirmed. In *Sharp* agt. *The Mayor, &c.* (18 *How. Pr. R.* 97 and 213); Judge INGRAHAM, in the course of his opinion, says: " It was not a different subject, but a provision by which the city authorities before paying the moneys to be raised by tax, should have the means of ascertaining that the judgments so paid were really due." In *Outwater* agt. *The Mayor, &c.* (18 *How. Pr. R.* 572), Judge DALY held that this fifth section comes clearly within the subject of the act as expressed in its title. He says in the same case : " A proviso in an act authorizing the supervisors to raise money by tax, which contemplates the possible reduction of the amount to meet which the tax is to be imposed, is as much a part of the subject of the act indicated by the title, as any other part of it." In *Joyce* agt. *The Mayor, &c.* (20 *How. Pr. R.* 429), the constitutionality of the section in question was again distinctly affirmed. There are other cases to the same effect, and I have met with none where a contrary view has been allowed to prevail. Another preliminary objection by the plaintiffs' counsel is, that assuming the validity of the said fifth section, it has no application to the plaintiffs' judgment in this case, for the reason that the judgment was not in existence in 1859, and was not provided for in the law for the tax levy for that year, which was the same act of which the section under consideration is a part.

The title of the act as before stated, is : "An act to enable the supervisors of the city and county of New York to raise money by tax." Does this language embrace the subject of more than one tax, and that for the year 1859 ? If it does not, then it is quite clear, I think, that the fifth section cannot be held to apply to any judgment not then in existence, unless obtained during the year 1859, certainly not to one obtained in June, 1863. On the hypothesis of such limitation of the subject of the act as indicated by its title, to construe the fifth section as being unlimited as to time in its application, would be to make it a *felo de se*, as embracing subjects not germain to the title of the act, and render it void, at least to the extent that such construction exceeds the limitation of the principal subject of the act. It is only upon the principle that the section is incidental to the principal subject of the act, and may, in its operation, lessen the amount to be raised by the tax, that its constitutional validity can be upheld. Looking at the language of the title alone, without reference to the substance of the principal object of the act as shown by its provisions, it may, as I think, admit of a construction which would justify the legislature, so far as the constitutional inhibition referred to is concerned, in making those provisions permanent, or rather of authorizing the board of supervisors to proceed from year to year in the imposition of taxes for the payment of liabilities of the city, and for the support of the city government. The language would be equally, and indeed more appropriate for the title of an act containing precisely the provisions which the act in question contains, which contemplate only the taxes for the year 1859.

The title thus admitting of either of these constructions, that one which the framers of the statute seem by its provisions in relation to the subject of taxes to have intended, should be adopted ; and if that be so, it follows that the fifth section must be confined in its practical application to

such judgments only as would be provided for by the provisions of the act, except for the enactment of that section. There is another preliminary objection introduced on the part of the plaintiffs to the motion upon which the order appealed from was made, which claims our attention, which is that John E. Develin, the counsel for the corporation, is the attorney of record for the defendants in this action; that the papers for the motion before the special term, were served on the plaintiffs' attorneys in the name of "Henry E. Knox, attorney for the comptroller," and that no order has been entered substituting Mr. Knox as attorney for the defendants in the place and stead of Mr. Develin, the counsel for the corporation; and that the motion therefore was unauthorized and irregular, and should not have been entertained.

The authorities are full to show that except for the fifth section of the act of 1859, this objection would be fatal to the motion. That section, however, if it has not been repealed by subsequent legislation, is a perfect answer to it. But it is answered by the plaintiffs' counsel, that by a provision contained in the first section of the act entitled "an act to enable the board of supervisors of the county of New York to raise money by tax for the use of the corporation of the city of New York," passed April 24, 1863 (*Sess. Laws of that year, chap.* 227, *p.* 407), the fifth section of the act of 1859 is, though not in express terms, yet by plain and necessary implication, repealed. The act of 1863 referred to, is the law for the tax levy for that year, and contains an enumeration of the various objects and purposes of the tax thereby authorized, and the amount appropriated to each, among which is the following: "'Salaries, law department, thirty thousand dollars. The head of this department shall have the exclusive right, and it shall be his exclusive duty to appear for and represent the said Mayor, aldermen and commonalty, and their officers, in all motions, actions and proceedings." This provision

declaring the rights and duties of the head of the law department, and the fifth section of the act of 1859, are clearly inconsistent and incompatible with each other, and the former being last enacted, repeals by implication the latter.

The 26th section of the act to amend the charter of the city of New York, passed April 14, 1857 (*Chap.* 446, *p.* 874), declares that there shall be a "law department," which shall have the charge of and conduct all the law business of the corporation and the departments thereof, &c., and that the chief officer thereof shall be called the "counsel to the corporation." The 5th section of the act of 1859, repeals in part the 26th section of the act of 1857, by conferring upon the chief officer of the department of finance the charge and control of a part of the law business of the corporation, and which would otherwise have appertained to the law department. By the provision referred to of the first section of the act of 1863, the business thus diverted from the law department is restored, and it is declared to be the exclusive right and duty of the head of that department to appear for and represent the city corporation and their officers, in all motions, actions and proceedings.

The constitutional validity of this provision in the act of 1863, is challenged by the counsel for the defendants, on the ground that it is a subject not embraced in the title of the act, and it was held void by the special term for that reason. But with all my respect for the learning and judicial accuracy of the justice who made the order, I find myself constrained to differ with him in his conclusion on that subject. I think the provision may be upheld upon grounds similar to those upon which the fifth section of the act of 1859 is sustained, viz: that it is incidental to the main subject and purpose of the act, and as showing for what purpose, and the whole of the purpose for which the thirty thousand dollars for salaries to the law department

was thereby appropriated. The appropriation was manifestly intended to be in full satisfaction for all legal professional services rendered for the city corporation and its officers, by any person or persons whatever, and to protect the corporation against claims on account of such services rendered by persons not connected with the law department, and this object it was doubtless supposed would be secured by the provision under consideration. Under the fifth section of the act of 1859, large claims might accrue for legal services instigated by the comptroller, in the employment of counsel not connected with the law department, and for which the corporation of the city might be held liable. I do not overlook the consideration that by one of the conclusions hereinbefore arrived at, this fifth section of the act of 1859 does not apply to judgments rendered after the expiration of that year, and that it may be said if that conclusion is correct, the comptroller at the time of the passage of the act of 1863, was powerless to cause the city expense, or subject it to liabilities for legal services instigated under the fifth section of that act after the year 1859. But the question of the extent of the application of the last mentioned section, as far as I have been able to ascertain, had never, at the time of the passage of the act of 1863, been the subject of judicial examination, and that differences of opinion might arise respecting it was possible, if not highly probable. That such differences of opinion have arisen, is shown by the motion and decision at special term, which we are now reviewing. If my conclusion upon it is correct, it puts an end to the present litigation. If I am overruled by my brethren, the argument is entitled to the same weight as if it had been adjudged that the fifth section was permanent in its application.

Other departments of the city government, as well as that of finance, might also incur liabilities for legal services, by employing counsel not connected with the law department, which it would be claimed the city was bound to pay,

and thus difficulties would be likely to arise in determining the gross amount to be allowed in the tax law for those expenses.    By confining the legal business to the law department, the allowance therefor could be determined with nearer approximation to what would be reasonable and proper to be allowed, and thus all claims against the city by counsel not connected with the law department would be silenced.    In *Connor* agt. *The Mayor, &c., of New York* (5 *N. Y. R.* ; 1 *Seld.* 285, 293), the design of the constitutional provision we are considering, is declared to have been to prevent the uniting of various objects having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by itself.    I remark, as was remarked by Judge RUGGLES in the case referred to, in relation to the statute then under consideration, that it is plain to my mind that the provision of the statute now under consideration is not within the mischiefs which this provision of the constitution was intended to remedy.

The foregoing are among the reasons which have brought me to the conclusion that the provision under consideration of the act of 1863, is incidental and germain to the main subject and purpose of the act as expressed in the title, and, therefore, not in contravention of the constitutional provision referred to.    The views herein expressed upon the preliminary objection last considered, have proceeded upon the assumption that the act of 1863 is either a private or local act, or both private and local.    This is denied on the part of the plaintiffs, who by their counsel, have presented in their brief furnished upon the hearing, a very strong argument to show that the act is neither private or local.    I incline very strongly to the opinion that the counsel are substantially correct in this respect, and if so, it is neither within the letter or spirit of the prohibition of the article of the constitution referred to.    I forbear

entering into a particular consideration of the question, as it would unnecessarily protract this discussion. The counsel for the plaintiffs have taken other preliminary objections to the motion before the special term, which I do not consider. If the views on those which have been particularly considered are sound, the order should be reversed. But I am unwilling to rest the decision of a case of this importance, both in respect to the amount and the nature of the questions involved, upon merely preliminary or formal objections, and will, therefore, proceed to consider the questions arising upon the merits of the order appealed from. It should be kept steadily and constantly in mind that the extraordinary power conferred upon the comptroller by the fifth section of the act of 1859, which is the only authority for the motion or the order, can only be exercised when he has reason to believe that the judgments referred to are obnoxious to one or both of the two following objections, viz : First. That they were obtained by collusion. Second. That they were founded in fraud. No other ground of objection can be alleged by him, or entertained by the court where he addresses his complaint, or asks to have a judgment opened or reversed. No error in the rendition of the judgment, no matter how palpable he may believe it to be, without the concurrence of collusion or fraud, can justify the comptroller in moving the court, or form a sufficient ground for the court to interfere, or to disturb the judgment in any respect. The law has provided other means for reviewing a judgment, upon allegations simply of errors of either law or fact, far more safe and satisfactory than those invoked in this case, and which were not intended by the legislature to be superseded by the fifth section of the act of 1859.

The comptroller no doubt, believed, for reasons which were satisfactory to him, that the judgment in this case was collusive or fraudulent, and that was sufficient to justify and require him to institute proceedings under the

section referred to, for the purpose of having it opened or
reversed, provided that section remained in force, and was
applicable to a judgment entered when this one was
obtained; but the court would not be warranted in grant-
ing the application, excepting upon evidence establishing
the collusion or fraud. It by no means follows, that on an
application of this kind the court is at liberty to interfere
with the judgment in every case where it would be reversed
upon appeal, although the error was ever so manifest.
There must have been collusion in obtaining the judgment,
or it must have been founded in fraud. Collusion is
defined by Webster as follows: "1. In law a deceitful
agreement or compact between two or more persons, for
the one party to bring an action against the other for some
evil purpose, as to defraud a third person of his right; a
secret understanding between two parties, who plead or
proceed fraudulently against each other, to the prejudice
of a third person. 2. In general, a secret agreement and
co-operation for a fraudulent purpose." In Burrill's Law
Dictionary the word has substantially the same definition.
Bouvier in his law dictionary defines the word as follows:
" Collusion, fraud.—An agreement between two or more
persons to defraud a person of his rights by the forms of
law, or to obtain an object forbidden by law, as for example,
where the husband and wife collude to obtain a divorce
for a cause not authorized by law. It is nearly allied to
*covin.* Second. Collusion and fraud of every kind, vitiate
all acts which are infected with them." See, also, the
definition of " collusion " in Tomlin's Law Dictionary,
which is to the same effect as the foregoing.

In view of these definitions, there can be no pretense
that the judgment in this case was obtained by collusion.
After several ineffectual attempts to obtain payment of the
award of arbitrators appointed under the act, and after
being told by the courts that their remedy was by action
upon the award, this action was brought. The defendants

appeared and put in their answer.   The cause was referred
to hear and determine, as a condition of postponing the
trial at the circuit; the case was regularly tried before the
referee, who reported in favor of the plaintiffs, and judg-
ment duly entered on his report.   Upon a careful exami-
nation of all the facts as contained in the affidavits and
other papers read and submitted upon the argument of the
appeal, I fail entirely to perceive the slightest evidence
of such collusion.

Was the judgment founded in fraud, or had it a fraudu-
lent foundation?   Did it originate in a dishonest and wicked
design on the part of the plaintiffs to obtain money from
the tax-payers of the city, to which they knew they were
not entitled?   Where is the evidence which leads to an
affirmative response to these inquiries, or either of them?
The question on this motion is not whether the plaintiffs
had or had not, in fact, a valid legal or equitable claim
against the city, which could be enforced in the courts,
but it is whether they believed in good faith that they had
such claim, and have in like good faith sought to enforce it
in the manner provided by the act of the legislature, in
obtaining the award of the arbitrators, and afterwards
seeking to collect that award by action in the supreme
court.   Is there any evidence before this court tending to
show that the plaintiffs in all this were actuated by dis-
honest or fraudulent motives, or with any other design
than the prosecution of a claim which they supposed they
had against the city corporation?   If there is, I confess
my inability to discover it.   The expression " founded in
fraud," which by the fifth section of the act of 1859, is
made one of the grounds of a motion by the comptroller
for relief against a judgment, contemplates an act or acts,
or a line of conduct on the part of a person obtaining the
judgment, which implies moral turpitude—actual, positive
fraud—craft, deceit or contrivance, used to circumvent,
deceive or mislead another.   They were not designed by

the legislature to embrace any species of fraud, if there be any such, which does not imply guilt or moral delinquency. It cannot be, as it seems to me, that it was ever designed by the provision in question, that the comptroller might, in this summary way, obtain the reversal or vacation of a judgment regularly obtained, upon the ground of any implied or constructive fraud in its foundation, not containing or implying any of the ingredients of actual and positive fraud, as above defined.

Independent of the consideration of the abstruse and complicated class of questions which would devolve upon the comptroller, who is not necessarily or generally a lawyer, to decide upon such construction of the section, before he could feel himself called upon or authorized to move in the matter, and of the delay and expense that would be likely to follow, I think it apparent from the language of the section that no such interpretation was contemplated by the makers of the law. The comptroller must have reason to believe, first, that the judgment was obtained by collusion, which by all the definitions to be found, implies such actual and positive fraud; or, second, that it was founded in fraud. The section provides for two stages or periods of time at which the objectionable attributes or qualities of the judgment are found to exist; the one relating to the means or agencies by which it was obtained, and the other going back and relating to its foundation. With respect to the latter, the words "founded in fraud," were intended to express the same moral quality attributable to the judgment in its origin or foundation, as the words "obtained by collusion," employed to designate the means by which it was obtained. In both cases the section seems to look to one and the same objection to the judgment, but applicable to different periods of its history, and in each implies bad faith, and a corrupt and dishonest purpose.

It is claimed on the part of the defendants, that so much

of the fourth section of the act of 1860 as provides for the adjustment and determination of the damages which the plaintiffs claim to have sustained, and all which follows in that section, is unconstitutional and void, inasmuch as it imposes upon the defendants a tribunal to determine the validity and extent of such claim, to which tribunal they have never given their consent, nor agreed to be bound by its decision. That it is, therefore, in contravention of that part of section 6, article 1, of the constitution, which declares that "no person shall  *  *  *  be deprived of life, liberty or property, without due process of law." It is undoubtedly a well settled principle, that the award of arbitrators is binding only on such parties as have agreed to the submission; and the legislature possesses no constitutional power, in case of a controversy between individuals, and between private as distinguished from municipal corporations, or between such individuals and such corporations, to compel either of the parties to such controversy to submit his or their claim to arbitration. If the award in such case should be adverse to such person, it would, if enforced, be depriving him of his property without due process of law.

The plaintiffs' counsel in answer to this objection, takes three positions, viz:

1. That the whole act, including that part of the fourth section to which the objection refers, was agreed to by the defendants, through their agents, before the act had become a law, and while on its passage through the legislature; and that the passage of the act as we find it, was the result of an agreement entered into between these parties, without which agreement no part of the act—at least no part of the fourth section—would have received the assent of the legislature. That the act was passed upon the application of the Croton Aqueduct Board and the city corporation, by their authorized agents, for the benefit of the city, and that the same has been sanctioned and adopted

by the corporation and the Croton Board, by availing them-
selves of all of its provisions especially beneficial to the
city. The first section of the act authorizes the Croton
Aqueduct Board to acquire the land required for a junction
gate-house, and to connect the same with the new reser-
voir and the city mains. The second section authorizes
the said board, in the name of the mayor, aldermen and
commonalty, to apply to the supreme court for the appoint-
ment of commissioners of appraisal, &c. The third sec-
tion applies to this act certain sections of an act passed
June 30th, 1853, entitled "an act to facilitate the acqui-
sition of lands for a new reservoir in the city of New York,"
which sections relate to the details of the proceedings to
get commissioners of appraisal appointed, together with a
specification of their powers and duties. The fourth sec-
tion in question, in the first place, authorizes the Croton
Board to construct the gate-house, &c., upon the lands so
to be acquired, and provides, that it shall be lawful for
such board to purchase the materials necessary for, and to
construct the works authorized by the act, at such prices,
and in such manner, by contract, or otherwise, as they
might deem the public interests required. Then immedi-
ately follows, in the same section, the provision which is
challenged by the comptroller as being unconstitutional.
It is in the following words : "And for the purpose of
adjusting and determining the damages that the contractors
to whom the gate-houses and aqueducts specified in this
section were awarded by the Croton Aqueduct Board on
the 27th day of October, 1858, which they may be equita-
bly entitled to recover of the city of New York, the same
may be ascertained by three arbitrators, one of whom may
be chosen by the mayor of the city of New York, and one
by the parties claiming such damages, and the third shall
be appointed by the two arbitrators chosen as aforesaid ;
such arbitrators shall take oath, and shall proceed to hear
the case, and make and deliver their award therein, as pro-

vided in title 14, chapter 8, part 3, of the Revised Statutes, third edition; and upon filing such report with the clerk of the county of New York, an order of confimation may be entered of course; and thereupon, if such report be in favor of the party claiming damages, such party shall be entitled to recover the same, and upon presenting a certified copy of such report and order of confirmation to the comptroller of the city of New York, it shall be the duty of such comptroller to draw his warrant for the amount thereof, and pay the same."

Under the provisions of section four, just recited, the arbitrators were appointed and organized, a hearing was had, and a report made by them in favor of the plaintiffs for $61,821, which report was filed in the office of the clerk of the county of New York on the 19th day of January, 1861; and an order of confirmation entered on the same day. Notices of the time and place of hearing before the arbitrators, were duly served on the then mayor, on the then comptroller, and upon the Croton Aqueduct Board, and the mayor gave notice to the then counsel to the comptroller, who declined to appear or take any part on said arbitration, upon the ground, as he alleged, that the law department would not have any duty to perform in the premises until a question should necessarily arise upon the power of the legislature to pass the law authorizing the arbitration. In order to an accurate appreciation of this position of the plaintiffs' counsel, it is necessary to notice more particularly the circumstances under which this act of 1860 became a law.

By section 38 of the amended charter of the city of New York (*Sess. Laws of* 1857, *chap.* 446, *p.* 874, *vol.* 1), all contracts to be made or let by authority of the common council, for work to be done, or supplies to be furnished, involving an expenditure of more than $250, shall be made and entered into by the appropriate heads of departments, unless by a vote of three-fourths of the members elected

to each board, it shall be otherwise ordered, and shall be founded on sealed bids or proposals made in compliance with public notice, advertised in certain newspapers; such notice to be published for at least ten days, &c., and all such contracts when given shall be given to the lowest bidder, &c.

On or about the 27th day of September, 1858, the Croton Aqueduct Department advertised for proposals for building the gate-houses and aqueduct of the new reservoir. Within the time specified in the advertisement for that purpose, and under and in pursuance thereto, the plaintiffs sent in sealed proposals for the work. The plaintiffs' bid was the lowest, and the Croton Aqueduct Board thereupon awarded the work to the plaintiffs, and communicated their proceedings and award to the common council on the 28th of October, in the year last aforesaid. The affidavit of Baldwin, one of the plaintiffs, after stating these proceedings, but with much more particularity, proceeds as follows: "That deponent and said Jaycox, thus feeling the assurance that they were by law entitled to said work, and entertaining no doubt but that the said award of the Croton Aqueduct Board would be confirmed by the common council, and it being represented to them by the said Croton Aqueduct Board that it was very important that they, said Baldwin and Jaycox, should be prepared to go on with the work as early as possible in April then next, as stated in their annual report of said board for 1858, they, said Baldwin and Jaycox, proceeded to make extensive arrangements for performing said work, the obtaining materials and labor for same, and made contracts for that purpose, and expended a great deal of money, and incurred very large liabilities by reason of their commencement of, and preparations for the carrying out of said award."

The affidavits in opposition to the motion show, that the confirmation of the award of the Croton Aqueduct Board by the common council, was opposed by Fairchild, Walker

& Co., who had a previous contract for the building of the new reservoir, principally upon the ground that the work of building the said gate-house and aqueduct was included in their said contract; that the committee of the board of aldermen having charge of the subject, reported unanimously in favor of confirming the said award of the Croton Aqueduct Board to the plaintiffs; that such report was not made in time for final action by that board of aldermen, and the subject was again referred by the then incoming board, and their committee made a majority report in favor of confirming said award; that the said board of aldermen confirmed and adopted the said report, and confirmed the said award to the plaintiffs by a nearly unanimous vote, but the same was afterwards defeated in the board of councilmen. Afterwards, and on the 5th day of September, 1859, the common council passed a resolution directing the Croton Aqueduct Board to have the gate-houses, aqueduct, and their appurtenances, for the new reservoir, constructed by Fairchild, Walker & Co., under their contract for building the reservoir, and providing for the prices to be paid them therefor.

The plaintiffs then commenced an action in the supreme court against the city and Fairchild, Walker & Co., to prohibit the city from permitting the latter to construct said gate-houses and aqueduct, and to restrain them from doing the work, in which action the plaintiffs were defeated, on the ground that they had no technical legal right to the job of doing the work, for want of confirmation by the common council. The plaintiffs then instituted proceedings for a mandamus, requiring the Croton Aqueduct Board to procure and execute to them the contract for doing said work, and to permit the plaintiffs to proceed and build the gate-houses and aqueduct, in which proceedings the plaintiffs were defeated. The plaintiffs then invoked the aid of the attorney general of the state against the city, as having violated its charter in awarding and letting said job to

Fairchild, Walker & Co., in contravention of the said 38th section of the amended charter, and thereupon an action was instituted by the attorney general in the name of the people of the state of New York, on the relation of the plaintiffs, against the mayor, aldermen and commonalty of the city of New York, and on the 15th day of November, 1859, obtained a temporary injunction, restraining the defendants and the Croton Aqueduct Board from employing Fairchild, Walker & Co., or other persons, to construct the gate-houses or aqueduct, and from doing any other act to carry out the provisions of said resolution, which injunction was on argument, made permanent.

It will, therefore be perceived that at this stage of the transaction, the corporation of the city and its Croton Aqueduct Board, were, by the last mentioned injunction, and the provisions of the said 38th section of the amended charter of the city, prevented from proceeding in the work of constructing the said gate-houses and aqueduct, and practically from progressing with the construction of the new reservoir to its completion, as it is elsewhere shown in the papers that it was absolutely necessary that the work of constructing the reservoir, or at least of a considerable portion of it, and of the gate-houses and aqueduct, should proceed together. In this emergency, an application was made by the Croton Aqueduct Board to the legislature of 1860, for a law authorizing the said board, among other things, to proceed with the construction of the gate-houses and aqueduct, and for that purpose to purchase the materials necessary therefor, and to construct the same, at such prices and in such manner, by contract or otherwise, as they might deem the public interests required. The plaintiffs opposed the passage of such law as an invasion of their rights under the said award of the Croton Aqueduct Board, and as an attempt on the part of the city and its Croton Board to evade the effect of the action brought in the name of the people against the city, and the injunc-

tion therein, such opposition being made before the legislature and its committees.

The affidavit of the plaintiff Baldwin, read in opposition to the motion, states in this connection : "That deponent and said Jaycox succeeded in preventing the passage of said law in the form so prepared by the city and its Croton Aqueduct Board, and the city could not obtain the passage thereof." The plaintiff Jaycox, in his affidavit, states that he has personal knowledge of the facts stated in Baldwin's affidavit, and that the same, and the statements therein contained, are true as therein stated.

It is shown by the affidavits read in opposition to the motion, that after much negotiation, and various statements by the parties pro and con, before and to the committee of the legislature having the subject in charge, it was finally consented and agreed by and between the plaintiffs and those representing the city of New York and the Croton Aqueduct Board, that the act of April 16, 1860, as it now appears (*Sess. Laws of* 1860, *p.* 772) should pass and become a law ; that the plaintiffs should cause the action commenced in the name of the people on the relation of the plaintiffs, to be discontinued, and the injunction granted therein should be withdrawn, and that the plaintiffs should unite with the city and its Croton Aqueduct Board in requesting and urging the legislature to pass the law ; and that thereupon, and in consideration of such consent and agreement, the legislature passed the law as it now stands. That the city, by its Croton Aqueduct Board, availed itself of all of the provisions of the act particularly favorable to its interests, and that the then mayor appointed one of the arbitrators, in pursuance of the provisions of the fourth section, which were incorporated into the act in favor of the plaintiffs, and which are now challenged as unconstitutional ; that the plaintiffs also carried out their part of the agreement in writing, with those representing the city and the Croton Board, in requesting and urging the passage.

of the act, and in causing said action to be discontinued and the injunction to be withdrawn.

Thus, I think, it is shown that the portion of the fourth section of the act which provides for adjusting and determining the damages that the contractors to whom the gate-houses and aqueducts, specified in the same section, were awarded by the Croton Aqueduct Board on the 27th day of October, 1858, which they might be equitably entitled to recover of the city of New York, was constitutionally valid, on the ground that it was assented and agreed to by all the parties interested therein, and that the voluntary arbitration which followed, provided the same was in all material respects organized and conducted regularly and pursuant to the said section, was valid and binding upon the city ; and upon the further ground that the law after its passage, has been adopted and acted upon by the head of the city government, in writing, with the plaintiffs, in creating and organizing the board of arbitration ; and furthermore, on the ground that the city authorities have availed themselves of so much of the act and of the fourth section as was beneficial to the city, thereby ratifying, if that was necessary, all the provisions of the act, and precluding themselves from alleging its invalidity.

2. Another position taken by the plaintiffs' counsel, independent of the one just considered is, that since the recovery of the judgment and before the motion to the special term, the legislature had passed a law recognizing the judgment, and providing for its payment. By the first section of the act for the tax levy of the city of New York, passed April 25, 1864 (*Sess. Laws of that year, chap.* 415, *p.* 940), the supervisors are authorized and required to order, and cause to be levied and raised by tax, &c., and to be collected according to law, for the use of the mayor, aldermen and commonalty of the city of New York, an amount of money equal to the aggregate of the several sums thereinafter mentioned, after deducting from such

aggregate according to law the estimated amount of income and receipts of said corporation for the current year. . The first section then proceeds to enumerate the several sums referred to, and the objects to which they are respectively appropriated, among which is the following : " Judgments recovered against the city—one hundred and seventy-four thousand dollars."

It is abundantly shown on behalf of the plaintiffs, that this sum was made up of the amounts of three several judgments then existing against the city corporation, one of which was the judgment in question in favor of the plaintiffs. That the act last mentioned was passed upon the application of the comptroller of the city, and founded upon the budget by him laid before the legislature as the basis thereof. It also appears that the same amount went into and formed a part of the tax for the year 1864, subject to such ratable deduction for estimated receipts and income as stated in the said first section of the act, and the presumption is that the same has been collected. If that is so, I can conceive of no good reason why it should be withheld from the plaintiffs. It has been appropriated by the legislature to that object, and the city has no right without further legislation to divert it to any other.

3. Another position taken by the plaintiffs in answer to the allegation of the want of power in the legislature to pass the act of April 16, 1860, takes issue upon the allegation, and asserts the constitutional power to pass the law.

The defendants are a municipal corporation, constituting a branch or portion of the government of the state as applied to the city of New York, invested with certain legislative, municipal and administrative powers, as defined in its charter, which is a grant of political power, creating a civil institution to be employed in the administration of the government. In the case of *Woodward* agt. *Dartmouth College* (4 *Wheat.* 518), WASHINGTON, J., said, that there were two kinds of corporations aggregate, viz : " Such as

were for public government, and others of a private char-
acter." That " the first are those for the government of
towns, cities or the like, and being for public advantage,
are to be governed according to the laws of the land."
These he said, were mere creatures of public institution,
created for the public advantage. Such public municipal
corporations derive their existence and all their powers
from the legislature, and hold all their franchises in subor-
dination to the power which creates them, and subject at
all times to legislative interference and control; and in
regard to the property held by the corporation, the corpo-
rate body is the trustee for the people, represented by the
supreme legislative power of the state. The legislature
of the state, therefore, in the exercise of such supreme
power, may constitutionally direct in relation to such pro-
perty, as perfectly as it can dispose of property owned by
the state as such.

Here was a claim by the plaintiffs against the city of
New York, for damages arising from the failure of the
former to obtain the contract awarded to them by the Cro-
ton Aqueduct Board. The legislature deeming the claim a
meritorious one, or that the plaintiffs were entitled to have
an opportunity of proving it to be such, provided for the
creation of a tribunal to determine the character of the
claim, and if meritorious and just, to determine its amount,
and providing further, in case the determination should be
in favor of the plaintiffs, for carrying such determination
into effect. The parties were, in reality, only the state
and the plaintiffs. It is true the taxpayers of the city
were interested, but when the state interferes in an act of
government, and as a question of power, the people of the
whole state, represented by their legislature, become the
only party besides the plaintiffs, and it was, therefore, com-
petent for it to pass this law without the assent of the city
or its corporation. I think this is not only good logic, but
is substantially sanctioned by the reason of Judge DENIO,

in his opinion in the case of *Darlington* agt. *The Mayor, &c.* (*reported in* 28 *How. Pr. Rep. p.* 352), in the court of appeals. In that case Judge D. delivered the prevailing opinion, in which he refers to the statute now under consideration, and expresses the opinion that it is free from constitutional objection. The opinion was concurred in by five of his brethren of the court, and was referred to approvingly by DAVIS, J., in delivering the opinion of the same court in the case of *The People* agt. *Pinckney et al.* (32 *N. Y. R.* 377). If the last three propositions, or either of them, be sound, every vestige and color of objection to the judgment is removed.

For the foregoing reasons, I am of the opinion that the order of the special term should be reversed, with ten dollars costs of the appeal, and ten dollars costs of opposing the motion before the special term.