JOHN B. CAIN AND ANOTHER v. COUNTY OF WABASHA AND OTHERS.[1]

July 3, 1925.

No. 24,787.

**Contract for publication of proceedings of county board not a violation of statute.**

The letting of the contract for the publication of the proceedings of a county board to the highest bidder, who agreed to have the publication made in seven other newspapers in the county, is not a violation of that portion of the statute authorizing the rejection of any offer if, in the judgment of the county board, the interests of the public so require, and requiring them then to designate "a paper" without regard to any rejected offer.

See Newspapers, 29 Cyc. p. 698 (Anno).

[1]Reported in 204 N. W. 916.

Action in the district court for Wabasha county by taxpayers to enjoin performance of a certain contract for county printing. The matter was heard by Callaghan, J., who denied a temporary injunction. Plaintiffs appealed. Affirmed.

*Thomas Mohn* and *Oscar Hallam*, for appellants.

*Murdoch & Lothrop* and *John R. Foley*, for respondents.

QUINN, J.

Taxpayers' suit challenging the legality of the action of the commissioners of Wabasha county in letting the 1925 contract for county printing to another, other than the lowest bidder. Plaintiffs appeal from an order denying them a temporary injunction.

There were two bidders, the Wabasha Leader and the Wabasha County Herald. The former has approximately 1,400 and the latter 1,050 subscribers. Bids were submitted by both papers. The Leader proposed to publish the proceedings of the county commissioners, the financial statement and other notices required to be published during 1925 at 40 cents per folio for the first and 20 cents per folio for each subsequent insertion, and agreed to furnish gratuitously copies of the financial statements to taxpayers requesting them. The Herald proposed to publish the same matter at the price of 90 cents for the first and 45 cents for each subsequent insertion, but in addition offered to procure publication of the same matter in seven other newspapers in the county. It is the acceptance of that bid, at a price more than double that of the Leader, that is under attack.

The problem is wholly one of statutory construction. We start with section 428, R. L. 1905, which provides that the "County Board shall cause the official proceedings of each session to be published in some newspaper * * * which publication shall be let by contract to the lowest bidder." Chapter 447, p. 640, L. 1907, added thereto the following: "The Board may reject any offer, if, in its judgment, the public interests so require, and may thereupon designate a paper without regard to any rejected offer." With that amendment the statute stands as section 662, G. S. 1923.

There is nothing in the record sustaining appellants' suggestion of fraudulent action by the county board, so we proceed at once with an examination of the only other argument which is, that the statutory requirement of designation of "a paper" was violated by the acceptance of the Herald bid. The contention is that the county designated not one paper but eight, the Herald and seven others, and that in consequence the action was violative of the statute and void.

We hold to the contrary. Unquestionably, as it stood until the 1907 amendment, the statute required that printing, such as that in question, "be let by contract to the lowest bidder." It is for us now to ascertain the intent of the 1907 amendment as applied to the problem before us. To start with, the board is empowered to reject any offer, if, in its judgment, public interest so requires. That is a broad power and accompanied by a correspondingly broad discretion. There must be a clear abuse of it before a court may interfere. No such abuse of discretion appears, nor is there any suggestion of "arbitrary action" such as was present in Bloomquist v. County of Isanti, 152 Minn. 126, 188 N. W. 64, and we pursue that branch of the case no farther.

There remains the mandate which, as applied to this case, upon the rejection of the low bid of the Leader, required the designation of "a paper," one paper, as the recipient of the award and the party to become responsible to the county under the resulting contract. We cannot follow the argument urging us to consider it a violation of the statute that eight papers were selected simply because the successful bidder agreed to secure publication in seven other journals.

The Herald bid on its own behalf. The acceptance of that bid resulted in a contract only between the county and the Herald. It did not lead to any contractual relation whatsoever between the county and the seven other newspapers collaborating with the Herald, or with any one of them. The arrangements of the latter were between them and the Herald and not with the county. The Herald was the only paper selected for the purpose of that contract.

Therefore, the statutory demand for the selection of "a paper," one paper, was complied with. Whatever the one paper, so selected, undertook to do in the way of procuring additional circulation through the media of other and additional publications, has no effect on the legality of the contract. The multiplied circulation did not increase the contract. The multiplied circulation did not increase the number of parties contracting with the county. That number remained at one and that one the Herald.

There is much to be said for the view, which apparently controlled the county board, that it is advisable to procure, within the limits of the county, as large a circulation as possible of all official publications. The use of provisions, in addition to those required by the statute, in a county printing contract, to bring about such a result, was sustained in Kief v. Mills, 147 Minn. 138, 179 N. W. 724. To give to the 1907 amendment a narrower application would deprive it of much of its intended effect and be a judicial intrusion upon a legislative function. As the learned trial judge so aptly put it, the controlling thing, under that law, is the "judgment," not of the court, but of the county board, and we concur in his view which was expressed thus:

"If in its judgment the public interest requires a greater circulation of the publication than the bidder is able to give then it may let the contract without reference to the bid. If this provision does not mean something like that then it does not mean anything. If it does vest this power in the county board, then the court, in the absence of proof that it acted arbitrarily or corruptly, cannot interfere."

We have no concern with the policy of the statute except to ascertain what it is. Obviously a printing contract is no longer required to be let to the lowest bidder. Thereby is opened the opportunity for fraud and collusion, such as that charged but not proven in this case. To the extent that abuses follow, they will be the result of the opportunity given by the lawmaking power and advantage taken thereof by the executive represented by county boards. Possibilities of abuse do not empower courts to restrict legislation

within limits that judges consider safe and wise. With such problems, judicial power is not concerned so long as constitutional limits are not transgressed. So, in this case, we cannot interfere with the legislative grant of power to county boards simply because the lack of restraint on its exercise lays it open to abuse at the expense of the taxpayers. The remedy, if one is needed, must be sought for with the legislature and not here.

To prevent misunderstanding, it is well to observe, in conclusion, that we have not considered, because not an issue, the financial statement and delinquent tax list. The only statute concerning the former seems to be section 667, G. S. 1923, requiring publication "for three successive weeks in some newspaper" of the county. Publication of the deliquent tax list is governed by sections 2108, 2109, G. S. 1923.

Order affirmed.