BRAINERD DISPATCH NEWSPAPER COMPANY v. COUNTY OF CROW WING.[1]

January 17, 1936.

No. 30,599.

[1]Reported in 264 N. W. 779.

*Franklin E. Ebner* and *Murphy & Cook,* for appellant.
*Ryan, Ryan & Ryan,* for respondent.

HILTON, JUSTICE.

Appeal from an order of the district court denying defendant's alternative motion for judgment or a new trial after a verdict had been directed for plaintiff in an action brought to recover under a contract for work done.

Prior to January 4, 1933, the plaintiff, Brainerd Dispatch Newspaper Company, a corporation, entered into an agreement with all the other legal newspapers in Crow Wing county whereby it was agreed that plaintiff was to submit the only bid for the county printing; that the bid would be at the highest legal rate allowed by statute; that each paper entering into such agreement would circulate the county printing among its subscribers in the form of a supplement to be furnished by plaintiff; and that in return each paper would receive proportionate compensation from the plaintiff.

At the annual county board meeting January 3, 1933, pursuant to the above agreement, plaintiff submitted the only bid for the county printing and at the highest legal rate. At that meeting a representative of plaintiff was present. He informed the county board of the agreement. The circumstances leading up to the submitting of the bid were explained. It was pointed out that there would be, by such a plan, a larger coverage and circulation and more publicity thus given to county official affairs and a desirable result achieved. The question of possible collusion and fraud arose, and at the request of the members of the county board the county attorney gave an opinion that the agreement did not violate any statute of the state. He also informed the board members that they were free to reject the one bid and call for others or to designate any other paper to publish the matter. The board then accepted the bid of plaintiff, at the same time requesting that the agreement to circulate the printing through all the papers be put in writing. This was done.

In January, 1933, the plaintiff did some printing under this contract for which the board allowed a claim of about $100. In February, 1933, plaintiff did more county printing, which under its bid would have entitled it to $1,009.05. The board refused to allow this claim on the ground that there was fraud and collusion in the submitting of the bid. Subsequently plaintiff brought this action to recover upon the agreed price and reasonable value. At the close of all the evidence the trial judge directed a verdict in plaintiff's favor for the full amount demanded.

Fraud is defined as:

"An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him, or to surrender a legal right; a false representation of a matter of fact (whether by words or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed) which deceives and is intended to deceive another so that he shall act upon it to his legal injury."

And:

"Collusion implies a secret understanding, whereby one party plays into another's hands for fraudulent purposes; * * *" Webster's New International Dictionary.

See Bouvier's Law Dictionary (Raw. 3d Rev.).; Words & Phrases; Baldwin v. City of New York, 45 Barb. 359, 369.

In this case there was no secret understanding or false representation of any kind. We need not go into the question as to whether this agreement would have been void had there been such a secret undisclosed agreement. In Hyer v. Richmond Traction Co. 168 U. S. 471, 477, 18 S. Ct. 114, 116, 42 L. ed. 547, it is said that the vice of combination "lies in the fact of secrecy, concealment and deception," none of which here exists. This is well brought out by the minutes of the meeting of the county board:

"Mr. Masters, representing the Brainerd Dispatch, explained that the newspapers had gotten together and decided on one bid with the understanding that supplements of the commissioners' proceedings,

financial statement, delinquent tax list and board of equalization proceedings were to be furnished to all of the papers of the county. He contended the increased circulation warranted the increased expense to the county."

Defendant claims that the decision of this court in State ex rel. Barnes v. Tauer, 178 Minn. 484, 227 N. W. 499, 500, is conclusive in its favor. It is not. The only question there was whether an agreement whereby the various papers in the county were to submit but one bid was a sufficient defense to a *mandamus* proceeding to compel the county board to accept that certain bid. This court held that it was. The problem as to whether an administrative board can be compelled to act is wholly aside from the question as to the liability of such a board for a contract it has entered into. This court so recognized that distinction in State ex rel. Barnes v. Tauer, 178 Minn. 484, 488, wherein it stated:

"The cases * * * [citing cases] are not mandamus cases. * * * No contract obligation is here sought to be enforced."

In Cain v. County of Wabasha, 164 Minn. 142, 204 N. W. 916, 917, eight papers in Wabasha county entered into an agreement similar to the one here involved. The county board was aware of this fact. This court upheld the right of the county board to let the bid to such a group at a rate almost twice as high as that submitted by another paper. It was justified because of the fact that the county board is not required under our statutes to let the printing to the lowest bidder and the fact that the publication in eight papers would permit of a much larger coverage than that offered by the lower bidder. This court stated [164 Minn. 145]:

"There is much to be said for the view, which apparently controlled the county board; that it is advisable to procure, within the limits of the county, as large a circulation as possible of all official publications."

Regan v. Babcock, 188 Minn. 192, 247 N. W. 12, 16, cited by defendant, is not in point. In the instant case it is undisputed that the county board members acted in good faith. There is no charge

of fraud or collusion on the part of the members. In Regan v. Babcock, 188 Minn. 192, 247 N. W. 12, the situation was far different. The language of the court there is conclusive as to that. Therein it stated [188 Minn. 200]:

"We therefore treat the situation alleged as one where there was not only conspiracy and collusion among the bidders but a constructive participation therein by the state officers whose duty it was to protect the public from the results of such a conspiracy."

2 Mason Minn. St. 1927, § 10463, which prohibits certain types of business combinations is not applicable to the facts of this case. Here any paper in the county could have made a bid had it desired to do so. The board, by virtue of 1 Mason Minn. St. 1927, § 2109, under which the contract was let, could have rejected any bid had it so desired. This is the same section that was involved in Cain v. County of Wabasha, 164 Minn. 142, 204 N. W. 916. The board could have designated another paper without regard to any rejected bid. The action of the plaintiff and the other papers had many of the elements of a joint enterprise. Certainly there can be no objection to that especially in view of the fact that the board did not have to accept the bid. In McMullen v. Hoffman, 174 U. S. 639, 652, 19 S. Ct. 839, 844, 43 L. ed. 1117, it was said:

"We have here nothing to do with a combination of interest which is open and avowed, which appears upon the face of the bid and which is therefore known to all. Such a combination is frequently proper, if not essential, and, where no concealment is practiced and the fact is known, there may be no ground whatever for judging it to be in any manner improper."

The arrangement here probably did result in an increased cost to the county, but it also gave the county added circulation for its official publications. The county board by the simple expedient of rejecting the one bid would have opened wide the door for competitive bids.

Affirmed.