NEWBY and others *v.* BROWNLEE.

*(Circuit Court, D. Kansas.   March 9, 1885.)*

1. TAXATION—LAND SOLD UNDER CONFISCATION ACT.
    Where land has been sold under the confiscation act of July 17, 1862, the life-estate of the owner is sold and transferred to the purchaser, and no title remains in the United States to exempt such land from taxation by a state.

2. SAME—DUTY OF LIFE-TENANT.
    Ordinarily, a tenant for life must pay the taxes assessed on land, if there is any income to pay them with.

3. SAME—KANSAS STATUTE.
    In Kansas the land itself is taxed, and it matters not what may be the condition of the title, or who may be the owner; and unless it comes under one of the exemptions named in the statutes it is subject to its burden of the public revenue; following *Blue-Jacket* v. *Commissioners,* 3 Kan. 347, and *Miami Co.* v. *Brackenridge,* 12 Kan. 114.

4. SAME—TAX DEED—SUBSEQUENT TAXES UNPAID.
    A tax deed is not invalid because the subsequent taxes had not been paid at the date of making it.

5. SAME—DESCRIPTION OF LAND.
    Where the land bid off at a tax sale is described in the tax deed as "the north-east eighty acres" of a quarter section, without saying that it is in a square, this will not invalidate the deed.

Action in Ejectment.   The opinion states the facts.

*John Doniphan,* for plaintiffs.

*D. S. Alford,* for defendant.

FOSTER, J.   The plaintiffs, who are the heirs at law of Nathan Newby, bring this action in ejectment to recover the S. E. ¼ of section 7, township 8, of range 20 E., being 160 acres of land lying in Jefferson county, Kansas.   The defendant, Brownlee, sets up a superior title to the plaintiffs', derived from a series of tax sales, and deeds made on such sales.   The plaintiffs attack the defendant's title as illegal, for the reason that the land was not taxable at the time the taxes were levied, and that the tax proceedings and the tax deeds were irregular and illegal, and are null and void.   The facts in reference to the title of this land are as follows:   In August, 1864, this real estate was seized by the United States marshal of the district of Kansas, in pursuance of a writ issued out of the United States district court of said district, under and by virtue of the act of congress of July 17, 1862, known as the "Confiscation Act."   In September following the United States attorney for said district filed in said court his libel against the property, averring that Nathan Newby, the owner thereof, was giving aid and comfort to the rebels, and was in armed rebellion against the United States, etc.   After admonition duly given, on the twenty-ninth day of November, 1864, said court entered a decree of condemnation and forfeiture of said real estate to the United States.   In December following a writ of *venditioni exponas* was issued to the United States marshal, and in January, 1865, he sold the said real estate under said writ to one James McCormick,

which sale was by the court confirmed in April, 1865. The land at that time was vacant, unoccupied, and without improvements, and so remained until about the year 1879, when the defendant, Brownlee, entered and took possession under his tax title, and he has since occupied said premises, and has made lasting and valuable improvements, and the premises and improvements are now worth over $5,-000. Nathan Newby died in the year 1881, and plaintiffs are his heirs at law.

The first point urged by the plaintiffs is that after the decree of condemnation and confiscation of this property it was not subject to taxation by the state, or, at most, the state could only tax the title and interest in the land which was confiscated to the United States and sold by the marshal under the writ of *venditioni exponas.* Just why this is so, the plaintiffs' counsel in his argument is not exactly clear and explicit, but raises at least the implication that such is the case because the general government still holds some title or estate in the land, perhaps in trust for the heirs of Nathan Newby; or, because the party in possession of the life-estate must keep down the taxes assessed on the land; that it is but the life-estate that is taxable. Neither of these positions can be maintained. Whatever interest or title in this land inured to the United States under the decree of condemnation and forfeiture passed by virtue of the sale to the purchaser, and thereafter the United States held no title or estate in the land. In the case of *Wallach* v. *Van Riswick,* 92 U. S. 213, the supreme court, speaking of the effect of a pardon as to restoring property which had been seized, condemned, and sold as this property was, use the following language:

"Considering that amnesty did restore what the United States held when the proclamation was issued, it could not restore what the United States had ceased to hold. It could not give back the property which had been sold, or any interest in it, either in possession or expectancy."

Again, in the same case, p. 212:

"And as the fee cannot be in the United States, they having sold all that was seized, nor in the purchaser," etc.

It is conclusively settled that the estate seized, condemned, and sold, under the confiscation act of July 17, 1862, was the life-interest of the offender. *Bigelow* v. *Forrest,* 9 Wall. 341; *Day* v. *Micou,* 18 Wall. 156; *Wallach* v. *Van Riswick,* 92 U. S. 202. In the case last cited, the court held it unnecessary to decide where the fee remained during the life-time of the ancestor, and it is unnecessary in this case, and would be presumptious in me, to speculate on that subject. But it is clearly decided that there is nothing left in the person whose estate has been confiscated, and nothing in expectancy which he can alienate or convey. And it is just as clearly decided that after the sale nothing remains in the United States.

There cannot be a pretext of title in the United States to exempt this land from taxation. Is there anything in the laws or statutes of

Kansas exempting it? The first section of the statute concerning taxation (Gen. St. 1868, p. 1019) reads as follows:

"All property in this state, real and personal, not expressly exempted therefrom, shall be subject to taxation in the manner prescribed by this act." Comp. St. 1879, p. 937.

The fifth exemption named in the statutes reads as follows:

"All property belonging exclusively to this state or to the United States." St. 1868, p. 1021; St. 1879, p. 938. "Each parcel of real property shall be valued at its value in money," etc. St. 1868, p. 1025; St. 1879, p. 947.

There is nothing in the statutes of Kansas, nor in the theory of taxation, which recognizes the taxing of any particular estate or interest in land. It is the land itself that is taxed, and it matters not what may be the condition of the title or who may be the owner; unless it comes under one of the exemptions named in the statutes, it is subject to its burden of the public revenue. *Blue-Jacket* v. *Commissioners*, 3 Kan. 347; *Miami Co.* v. *Brackenridge*, 12 Kan. 114.

The question as to who shall pay the tax is quite another thing, and is a matter with which the taxing power has no concern, nor has the party buying the land at the tax sale any concern therein, unless the duty rests on him to pay the taxes. It seems to be settled by the decided cases that the tenant for life of real estate must pay the taxes, if there is any income to pay them with. *Pierce* v. *Burroughs*, 58 N. H. 302; *Clark* v. *Middlesworth*, 82 Ind. 240; *Johnson* v. *Smith*, 5 Bush. (Ky.) 102; *Prettyman* v. *Walston*, 34 Ill. 192; 1 Washb. Real Prop. (3d Ed.) 112; *Pike* v. *Wassell*, 94 U. S. 714. In the last cited case, the supreme court held that if the life-tenant failed to pay the taxes, the children of the person whose estate had been forfeited, being the heirs apparent, may take the proper proceedings to enforce that duty on the tenant. But suppose the heirs fail to enforce this duty on the tenant, and the property is sold for the tax, and a stranger bids it off; certainly no one would assert that it in any way concerned him, or affected his title under the tax sale. This defendant, Brownlee, was not the tenant, nor did he hold under the tenant, nor was he under any obligation to pay off these taxes, nor was he concerned in the confiscation proceedings. He appears to have been a stranger to the whole transaction, and as such bought this land at tax sale. And this brings us to the other question, the validity of the defendant's title under the tax deeds.

There are two or three objections made to these tax deeds or part of them. One objection is that all the subsequent taxes, to the year for which the property was sold, had not been paid at the time of making the deed. Another objection is that in one deed the land bid off is described as "the north-east eighty acres" of said quarter section, and does not say it is in a square.

As to the first objection, I find nothing in the law invalidating the tax deed because the subsequent taxes had not been paid at the date of making the deed. The General Statutes of 1868, p. 1058, §

112, and the Compiled Laws of 1879, p. 966, § 138, have the following provision:

"If any land sold for taxes shall not be redeemed within three years from the day of sale, the county clerk of the county where the same was sold, shall, on presentation to him of a certificate of sale, execute, in the name of the county, as county clerk, under his hand and seal, of the county, to the purchaser, his heirs and assigns, a deed to the land so remaining unredeemed, and shall acknowledge the same, which shall vest in the grantee an absolute estate in fee-simple in such lands, *subject, however, to all unpaid taxes and charges which are a lien thereon.* And such deed, duly acknowledged, shall be *prima facie* evidence of the regularity of all proceedings, from the valuation of the land by the assessor, inclusive, up to the execution of the deed."

The words which I have italicized in the above quotation indicate very clearly that a tax deed may be made where the subsequent taxes have not been paid, but the title conveyed is subject to such unpaid taxes.

The other objection is to the description of the land. It appears in the deed, dated January 22, 1878, for sale of 1873. The law in force at the time of that sale is found in St. 1868, p. 1047, § 85; and it reads as follows:

"The person at such sale, offering to pay the taxes and charges against any one piece or parcel of land for the smallest quantity of land in a square, as nearly as practicable, off from the north-east corner of the tract, or piece of land, shall be the purchaser of said quantity, located as aforesaid."

This statute fixes the shape of the piece of land bid off. It must be in a *square*, and there could be no difficulty in locating exactly the lines, and setting off the land purchased. The Statutes of 1879, p. 961, § 111, changed this section, and provides that the piece bid off shall come off the *north side of the tract.* Of course, the deed would then read, so many acres off the *north side.* Besides, there appears to have been four other sales of this *whole* quarter section for taxes, and deeds made thereon, and that whole title is now held by the defendant, Brownlee. Two of these sales were for taxes prior to 1873, and two for subsequent years, (1875 and 1877;) and all these sales appear to have been made before Brownlee entered on the land. These deeds in form are in substantial compliance with the requirements of the statute, and I am compelled to admit that the objections made to them are not well taken, although it would have gratified me to hold the contrary, and relegate the defendant to his rights under the occupying-claimant act.

Judgment must go for the defendant.