ANNIE REIMER and another vs. STANFORD NEWEL.

October 9, 1891.

| 47 | 237 |
|----|-----|
| 66 | 230 |
| 47 | 237 |
| 71 | 519 |
| 47 | 237 |
| f83 | 429 |
| 47 | 237 |
| 85 | 280 |

**Taxes—Annual Meeting of County Board.**—The meeting of the board of county commissioners of Hennepin county held, pursuant to Sp. Laws 1877, c. 205, on the first Monday of January, is "their annual meeting in January," at which they are authorized to designate the newspaper in which the delinquent tax list shall be published.

**Same—Resolution for Publishing Delinquent List.**—A resolution passed in January, 1884, designating the newspaper in which "the real-estate delinquent-tax list for the year 1883" should be published, construed as meaning the list of delinquent taxes for 1883, and not of taxes for 1882, which had become delinquent in 1883.

**Same—Resolution only need be Filed.**—A certified copy of the resolution, designating the newspaper in which the delinquent-tax list shall be published, is all that is required to be filed with the clerk of the district court. It is not necessary to file a copy of the proceedings of the board of county commissioners showing the vote by which it was passed, and the validity of its passage.

**Same—Identity of Newspaper under Changed Name.**—Evidence *held* to justify a finding that the newspaper in which the delinquent list was published was the identical one designated by the board of county commissioners, notwithstanding that, after the designation and before the publication, it had changed its name from the "Daily Minnesota Tribune" to the "Minneapolis Daily Tribune."

**Same—Constitution—Invalid Section not affecting other Sections.**—The invalidity of Laws 1881, c. 10, § 22, does not affect the validity of the provisions of section 11 of the act.

**Same—Notice of Expiration of Redemption—Description of Property.** The notice of the expiration of the time of redemption was issued by the auditor of Hennepin county, and described the land as "lot 8, block 4, of Penniman's Addition," without mentioning the state, county, or city, but stating that it had been sold pursuant to a tax judgment of the district court of the county. There was no other addition or subdivision of land in Hennepin county platted or known by any name embracing the word "Penniman's," except "Penniman's Addition to Minneapolis," which was commonly known to and designated by the inhabitants of Minneapolis and the general local public simply as "Penniman's Addition." *Held*, that the notice sufficiently described the property.

Same—Sufficiency of Sheriff's Return.—The return of the deputy-sheriff of Hennepin county in this case *held* sufficient to warrant the county auditor to publish the notice.

Same—Acquisition of Tax Title by Mortgagee.—Under the provisions of Gen. St. c. 11, § 87, a mortgagee may acquire tax title to the mortgaged premises as against the mortgagor, where he is neither legally nor equitably bound to protect the property against the taxes for which the sale is made.

Action brought in the district court for Hennepin county, to determine the defendant's adverse claim to lot 8, in block 4, in Penniman's addition to Minneapolis.

Both parties claimed title from Abby L. Newel, who, on April 8, 1874, being seised in fee, conveyed the lot to Bernhard Reimer for $1,000, taking back a purchase-money mortgage of $750, securing four notes payable, respectively, at one, two, three, and four years from that date. The mortgage contained a covenant by the mortgagor that he would pay all taxes assessed on the premises. No payment was made on the mortgage debt, except $50 paid in 1874, nor did Reimer pay any of the taxes. Abby L. Newel died in 1882, and her will was proved in Hennepin county, and on August 28, 1882, letters of administration with the will annexed were issued to defendant, a resident of Ramsey county, who has ever since been such administrator. Plaintiffs are the widow and the grantee of the heirs-at-law of Bernhard Reimer, who departed from the state about April 1, 1875, and never returned.

On April 14, 1875, John B. Mueller and John Heinrich, creditors of Reimer, attempted to bring suit against him in the district court for Hennepin county, and caused a judgment to be entered, which was void for the reason that his name was spelled Reiner in the published summons, the affidavit for attachment being also defective. A writ of attachment was, however, issued and levied on the lot prior to publication of the summons. Execution issued on the judgment and was levied on the lot in question, and at the execution sale, September 23, 1876, Mueller and Heinrich purchased, and afterwards Mueller conveyed to Heinrich, and in September, 1884, Heinrich

conveyed, by quitclaim deed, to this defendant. There was no redemption from the sale. On December 30, 1884, defendant presented his deed to the county auditor for certification and entry of transfer, and on the same day filed it for record. The auditor transferred the lot on his books into the name of defendant, and it has ever since been assessed in his name as owner.

On August 25, 1884, a tax judgment for the taxes of 1883 was entered against the lot, under which it was sold, on September 18, 1884, to one Johnson, who, on February 16, 1886, assigned his certificate of purchase to the defendant. On July 26, 1889, the defendant presented the certificate, so assigned to himself, to the county auditor, who issued a "notice of expiration of redemption" in the usual form, addressed "to Stanford Newel," and in which the property was described as "Penniman's Addition, Lot 8, Block 4," without mention of city, county, or state. "Penniman's Addition to Minneapolis" was at that time an old and well-known platted tract, situated in the central resident portion of the city, and the only subdivision in the city or county platted or known by any name embracing the word "Penniman" or any similar word, and was and is commonly known and designated by the inhabitants of the city as "Penniman's Addition," and as well known to the general public by that name as by the fuller designation "Penniman's Addition to Minneapolis," which latter designation was used in describing the lot in question in the tax judgment and all proceedings anterior thereto, and in all the papers relating to the sale, except the "notice of expiration of redemption." The auditor delivered this notice to the sheriff, who returned it to the auditor's office on July 30, 1889, with two papers annexed to it, the first being a certificate of the sheriff, by John B. Sirois, his deputy, that after diligent search he could not find "the within-named defendant, Stanford Newel," in his county; the second being an affidavit of the same deputy "that on the 30th day of July, A. D. 1889, he visited the premises described in the annexed notice of expiration of redemption; that after diligent search and inquiry he found the said premises unoccupied, and therefore returned same as wholly unoccupied." The auditor thereupon caused

the notice to be regularly published. Proof of publication was duly filed, and no redemption was made, nor were the taxes of 1883 ever paid except by the sale.

The action was tried by *Hicks*, J., who found the facts as above recited, and that throughout the year 1889 the lot was in fact vacant and unoccupied, and that defendant's purchase of the tax title from Johnson was not intended to and did not operate as a payment of the tax of 1883, nor was that title taken by him for the protection of Reimer or his heirs or the estate of Abby L. Newel. The court also found the facts on which rested an earlier tax title relied on by defendant, but which was held void, and also, in the findings, recited in detail the proceedings on which the tax judgment and sale of 1884 were based, and which are considered in the opinion. Upon these facts the court held that upon the expiration of the time of redemption pursuant to the notice, which was prior to the commencement of this action, defendant became vested with a perfect title in fee, which he has still retained. Judgment was accordingly ordered for defendant, a new trial was refused, and the plaintiffs appealed.

*Selden Bacon, J. C. Judge*, and *Sawyer & Sawyer*, for appellants.
*Daniel Fish*, for respondent.

MITCHELL, J. As the defendant prevailed in the court below solely upon the strength of a tax title acquired by sale of the premises in controversy under a judgment for the taxes for the year 1883, it is only necessary to consider the points made by the plaintiffs against the validity of that title.

1. The board of county commissioners of Hennepin county designated the newspaper in which the delinquent tax list should be published at their meeting held on the first *Monday* in January, 1884, pursuant to the provisions of Sp. Laws 1877, c. 205. It is claimed that under the provisions of Gen. St. 1878, c. 11, § 72, requiring the board of county commissioners to make this designation "at their annual meeting in January or at the meeting of said board in March," this ought to have been done at a meeting held on the first *Tuesday* of January, as provided by Gen. St. 1878, c. 8, § 102. Our view is that the act of 1877 is, as to Hennepin county, a substitute for, or amendment of, prior statutes fixing the times for meetings of the

board of county commissioners, and consequently that the only meet-
ing which they are required to hold in the month of January is that
held on the first Monday of that month, which is therefore "their an-
nual meeting in January."

2. The resolution of the board designated the "Daily Minnesota
Tribune" as a newspaper in which "the real-estate delinquent-tax
list of Hennepin county for the year 1883" should be published.
It is urged that this means the list of taxes for the year 1882 which
had become delinquent in 1883. It seems to us that this is not a
fair or reasonable construction of the language of the resolution.
Perhaps a careful lawyer would have chosen language more explicit
and less open to criticism, but we think the average man, honestly
seeking for information, would have no difficulty in understanding
that the resolution referred to the taxes of 1883 that should remain
delinquent, or, as it is often expressed, the list of delinquent taxes
for the year 1883. Force is added to this construction of the lan-
guage of the resolution from the facts that the list of delinquent
taxes for 1882 was required to be published in 1883, and that the des-
ignation of the newspaper in which it should be published had to be
made by the county board in January or March of that year, after
which that duty, if not previously performed by the board, devolved
on the county auditor; also that January, 1884, was the proper time
at which to designate the newspaper in which to publish the list of
taxes for 1883 which should become delinquent in June, 1884.

3. A copy of the resolution itself, designating the newspaper in
which the publication of the delinquent-tax list is to be published,
certified to be such by the county auditor, is all that the statute re-
quires to be filed with the clerk of the district court. Gen. St. 1878,
*c.* 11, § 72. The claim that the proceedings of the board, showing
the time of passage, the persons by whom passed, and the validity of
its passage, should also be filed, finds no support in either the lan-
guage or purpose of the statute.

4. After the "Daily Minnesota Tribune" was designated, but be-
fore the delinquent list was published, that paper changed its name
to the "Minneapolis Daily Tribune," and at the same time got what
in the parlance of printers is called "a new dress,"—that is, a new-

outfit of type,—but, as the court finds, no other change was made in the paper, and the "Minneapolis Daily Tribune" was the same paper as the "Daily Minnesota Tribune" mentioned in the resolution referred to, and, as the undisputed evidence shows, it was published at the same place and sent out to the same subscribers to fill their subscriptions. Notwithstanding the change of name, the evidence abundantly justified the finding of the court that the newspaper in which the delinquent list was published was the identical one designated in the resolution of the county board. Any other conclusion would be unreasonable, and attended with many serious practical difficulties.

5. The notice or citation at the head of the delinquent list was in the precise form prescribed by the law then in force. Laws 1881, c. 10, § 11. In *State* v. *Smith*, 35 Minn. 257, (28 N. W. Rep. 241,) section 22 of this act was held void, because not embraced within the title; but this did not affect the validity of the other provisions of the act, consistent with and germane to the subject expressed in its title, and which are not so dependent upon or connected with the void section as to require them to be rejected under the familiar test so often applied by this court. *City of Duluth* v. *Krupp*, 46 Minn. 435, (49 N. W. Rep. 235.)

6. It is objected that the notice of the expiration of the time of redemption was insufficient, in that it did not sufficiently describe the property. It described it as "Lot 8, Block 4, of Penniman's Addition," but did not mention the county or state in which the property was situated, or that the addition referred to was Penniman's addition to Minneapolis. The absence of specific mention of county and state is fully covered by *Sperry* v. *Goodwin*, 44 Minn. 207, (46 N. W. Rep. 328.) The facts that the notice emanated from the auditor of Hennepin county, and specified that the land had been sold pursuant to a tax judgment of the district court of that county, were enough to inform any one that the land was situated therein. The omission to add the words "to Minneapolis" after the word "addition" was, upon the same principle, immaterial, in view of the undisputed evidence that there was no other addition or subdivision in Hennepin county platted or known by any name embracing the word "Penniman's," and

that Penniman's addition to Minneapolis was and is commonly known to and designated by the inhabitants of Minneapolis and the public generally as "Penniman's Addition."

7. The notice was delivered by the county auditor to the sheriff of Hennepin county, and the deputy-sheriff, one Sirois, made a return thereon in two parts, one certifying that he had been unable to find Stanford Newel (the party to whom the notice was addressed) within his county, and that said Newel could not be found in said Hennepin county; the other, in the form of an affidavit, that he was deputy-sheriff of Hennepin county, and had visited the premises described in the notice, and that after diligent search and inquiry he found that the premises were unoccupied. It is not claimed that Newel could have been found within the county, and the evidence is undisputed that the premises were in fact unoccupied. The statute provided (Gen. St. 1878, *c.* 11, § 121) that if the land was vacant, and the person named in the notice could not be found, "of both which facts the return of the sheriff shall be *prima facie* evidence," the notice shall be published. The statute does not make the sheriff's return conclusive, and we fail to discover anything in it that makes such return exclusive evidence of these facts. But, even conceding that the auditor could only proceed to publish the notice upon the return of the sheriff, the return in this case was amply sufficient to authorize him to do so. The return of the deputy-sheriff is as good as that of the sheriff himself, and it can make no difference whether that return is in the usual form of a certificate, or in the form of an affidavit to the facts, or whether it is in two parts, or all combined in one.

The notice was properly addressed or directed to Newel as the party in whose name the property was assessed. To the suggestions of appellants' counsel on this point, it need only be said that Newel did not cause the property to be assessed in his own name, and did not "cause" the notice to be served. The transfer to his name on the grand-list was presumably the official act of the auditor when he presented his quitclaim deed from Heinrich to that official, to secure the certificate that the taxes were paid in order to have it recorded. Neither had Newel, as holder of the certificate of tax sale,

any voice in deciding when, how, or upon whom the notice should be served.

8. The last point made is that defendant has no right to set up a tax title against the plaintiffs. The facts are that one Abby L. Newel, deceased, of whose estate defendant was administrator, held, at the time of her death, a mortgage on the premises executed by one Reimer, (to whose interests plaintiffs had succeeded,) in which the mortgagor covenanted to pay the taxes on the premises. Neither the mortgagee nor her administrator had ever gone into possession of the mortgaged premises. Defendant purchased at the tax sale in his own name individually, and not as administrator. Conceding, in the language of counsel, "that there is substantial identity of defendant and mortgagee in this case," there was nothing to prevent him from acquiring against the mortgagor or his successors in interest a tax title on the premises. Whatever may be the rule in other jurisdictions, or whatever may be thought of the policy of permitting a mortgagee in any case to acquire, as against the mortgagor, a tax title on the mortgaged premises, there can be no doubt but that, under our statute, this may be done where, as in this case, the mortgagee is neither legally nor equitably bound to protect the property against the sale or the taxes for which the sale is made. Gen. St. 1878, c. 11, § 87.

The evidence (upon which plaintiffs' counsel lays much stress) tending to show that defendant made his purchase at the tax sale as a payment of the tax, and not for the purpose of acquiring a tax title adverse to either the mortgagor or the mortgagee, was not such as to require a finding to that effect; and the court has expressly found that the purchase was not intended to operate as a payment of the tax, nor was the tax title taken by defendant for the protection of the mortgagor or the mortgagee. If the question is material, this finding of fact is conclusive.

Order affirmed.