# ROSE TURNER v. EUGENE N. EDWARDS AND OTHERS.[1]

May 10, 1940.

No. 32,304.

*John I. Davis* and *F. C. Anderson,* for appellant.

*Frank A. Barnard* and *Appel & Morton,* for respondents except Alvira T. Edwards.

[1]Reported in 292 N. W. 257.

GALLAGHER, CHIEF JUSTICE.

Plaintiff brought this action to quiet title to certain real estate, basing her claim on a tax title. She appeals from a judgment in defendants' favor.

The property involved is in the city of Benson, Swift county. It constituted the homestead of one J. N. Edwards prior to his death on January 24, 1930. Thereafter a life estate therein was decreed to his widow, Alvira T. Edwards, one of the defendants in this action, and the remainder to his children and grandchildren by a former marriage, the other defendants herein. Plaintiff is a daughter of Alvira T. Edwards by a former marriage and lives in Minneapolis. Her mother occupied the premises until September, 1936, when she moved to Minneapolis to reside with plaintiff.

Mrs. Edwards failed to pay the 1929 taxes, and the property was sold at tax sale on May 11, 1931, to plaintiff for $193.63. A certificate of tax judgment sale issued to her. She also purchased the property at tax sale each of the succeeding years to and including 1936, and there issued to her a similar certificate each of such years. She paid the 1935 and 1936 taxes when they became due and procured receipts therefor. In May, 1936, plaintiff presented her 1931 certificate to the county auditor of Swift county, whereupon he issued and caused to be served on Alvira T. Edwards, the occupant, a notice of expiration of time for redemption. No redemption was made. Plaintiff thereafter instituted this action to quiet title to the premises.

The trial court, among other things, found that there was collusion between the life tenant and plaintiff to defeat the rights of the remaindermen and that the tax judgment was void; it ordered judgment dismissing the action with prejudice. Plaintiff's alternative motion for amended findings of fact or a new trial was denied. Thereafter she moved for a determination of the amount of the taxes paid and an order adjudging the same to be a lien. It was denied, and plaintiff then moved for an order vacating the previously mentioned order for judgment and for an

order determining the amount of taxes paid and adjudging the same to be a lien. These motions and plaintiff's further motion for a new trial were denied. Judgment was entered dismissing the action with prejudice and denying plaintiff any lien for taxes paid.

On this appeal it is contended: (1) That the trial court erred in permitting evidence to be introduced to prove fraud and collusion; (2) that the evidence does not sustain a finding of fraud or collusion on the part of plaintiff and the life tenant; and (3) that plaintiff is entitled to a lien on the premises for the amount of the taxes paid by her. It is not here argued, as it was below, that the trial court erred insofar as it based its conclusion that the tax judgment was void upon the fact that the property in question was inadequately described in the proceeding culminating in the sale thereof for delinquent taxes.

1. Plaintiff alleged in her complaint that she was the owner of certain described land and in possession thereof. The basis of her claim was not referred to or set out in the complaint. The answer denied that plaintiff was the owner of the land or entitled to its possession. Upon trial, plaintiff produced, in support of her claim of ownership, a certificate of tax judgment sale. Defendants introduced evidence tending to show that this title was procured by fraud and collusion. Appellant argues that this evidence was not admissible under the pleadings. It is true that as a general rule fraud is new matter to be specially pleaded and is inadmissible under a general denial. See 3 Dunnell, Minn. Dig. (2 ed.) § 3836, and 5 *Id.* § 7585. This rule, however, has no application where a written instrument is introduced in support of a general allegation not disclosing its existence. In Reeves & Co. v. Cress, 80 Minn. 466, 83 N. W. 443, it was held that when a writing is introduced in support of an allegation in a pleading which does not in any way indicate the existence thereof, it cannot be required that the opposite party shall anticipate its production and allege in his pleading fraud in its procurement in order to introduce evidence of such fraud. See also Adamson v.

Wiggins, 45 Minn. 448, 48 N. W. 185. Plaintiff's allegation of ownership did not disclose to defendants that she was relying on a tax deed. Defendants could not, therefore, under the rule of the Reeves case [80 Minn. 466, 83 N. W. 443], be required to have alleged fraud in order to introduce evidence thereof.

2. There is little conflict in the testimony which we now consider. It does not appear that Mrs. Edwards ever made any serious attempt to fulfill her duty to pay the taxes on the homestead. Yet by writing to one of the remaindermen and stating that she had all she could do to keep up the taxes on the home she implied that the taxes were being paid. The relations between Mrs. Edwards and plaintiff appear to have been very friendly. From the testimony it can be gathered that Mrs. Edwards paid the money for delinquent taxes most of the time although she did so in the name of her daughter and, it is claimed, with Miss Turner's money. At the time the period for redemption expired the amount required to redeem was considerably less than the value of the house, and yet, so far as the record shows, Mrs. Edwards made no effort to secure funds with which to pay the taxes and prevent the acquisition of title by her daughter. The period for redemption had but recently expired when Mrs. Edwards was acting as agent for plaintiff in an attempt to sell the property. It is not without significance that Mrs. Edwards, when she left the home, moved to Minneapolis to live with plaintiff. The net result of the transaction was that the life tenant lived in the homestead for about five years without paying the taxes, whereupon her daughter by a former marriage obtained legal title to the property, valued at about $5,000, for less than $1,000. It may be added that the testimony shows quite clearly that both Mrs. Edwards and Rose Turner intended this result, knowing that as a consequence the children of Mr. Edwards would be deprived of their interest in the home.

It is quite apparent here that what plaintiff did was to advance money to her mother for the purpose of paying the taxes. We quote from her testimony:

Q. "You were supposed to have $193.63 on the 11th day of May, 1931. Did you send that by cash in an envelope to your mother?

A. "I did not; my mother came down to the G. A. R. convention; she has done so for many, many years. Some of those conventions come in May, some of the various departmental meetings come along before that. She has been down probably a dozen times, practically every year, ever since she came here. I saw her many times when she was there and I gave her the money; when she wasn't there I came up and gave it to her. I myself came up very often, and she is often down there when I was on duty; I have always seen to it that she got that money in time to pay the taxes."

Collusion is a secret agreement and coöperation for a fraudulent or deceitful purpose. Webster's New International Dictionary (2d) 1935. It implies a secret understanding whereby one party plays into another's hands for fraudulent purposes. W. E. Bowen Improvement Co. v. Van Hafften, 209 Mo. App. 629, 238 S. W. 147; Brainerd Dispatch Newspaper Co. v. County of Crow Wing, 196 Minn. 194, 196, 264 N. W. 779, 780; Lindstrom v. National L. Ins. Co. 84 Or. 588, 594, 165 P. 675, 677. In its legal significance it involves an agreement between two or more persons to defraud another of his rights by forms of law or to obtain an object forbidden by law. Burt v. Clague, 183 Minn. 109, 235 N. W. 620. It is a general rule that fraud renders voidable everything into which it enters. The court will look through any form of instrument or proceeding, no matter how solemn, in order to prevent a party from profiting by his own fraud. It is immaterial that he has conformed to all the formal requirements of the law. 3 Dunnell, Minn. Dig. (2 ed. & 1937 Supp.) § 3834; Baart v. Martin, 99 Minn. 197, 108 N. W. 945.

The court could find, as it did, collusion between the life tenant and plaintiff.

3. Plaintiff concedes that her tax title is invalid not because of collusion, as found by the trial court, but because the property

was improperly described in the certificate and notice. She contends, however, that, even though her title is invalid, she is entitled to a lien on the premises involved for the amount of the taxes and penalties paid by her with interest at the rate specified in the statute. She bases her claim on the provisions of 1 Mason Minn. St. 1927, § 2188, which gives a lien to a person whose tax title is declared invalid for any cause other than one which renders the tax embraced in the certificate void. Involved in this case, however, is a factor not covered by the statute and probably not even contemplated by it. The trial court found and, as we have indicated, the evidence sustains such finding, that plaintiff and the life tenant colluded to defeat the interests of the remaindermen. That presents for determination the question as to whether plaintiff under such circumstances is in a position to acquire any greater interest than the life tenant would have acquired had she purchased the property at tax sale and thereafter caused a notice of expiration of time for redemption to be served.

As between the life tenant and the remaindermen, it was the duty of the former to pay the taxes. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3170; Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830; Smalley v. Isaacson, 40 Minn. 450, 42 N. W. 352; St. Paul T. Co. v. Mintzer, 65 Minn. 124, 67 N. W. 657, 32 L. R. A. 756, 60 A. S. R. 444; Baldwin v. Zien, 117 Minn. 178, 186, 134 N. W. 498; Nordlund v. Dahlgren, 130 Minn. 462, 153 N. W. 876, Ann. Cas. 1917B, 941; Kreuscher v. Roth, 152 Minn. 320, 188 N. W. 996. It appears that Mr. Edwards died in January, 1930, and that plaintiff's certificate purchased in 1931 represented taxes for the year 1929. Any claim that the life tenant was not responsible for these taxes is disposed of in Baldwin v. Zien, *supra*.

The acquisition of a tax title by a life tenant is treated as a payment or redemption thereof. Any other rule would permit the defaulting life tenant to benefit by his own wrong. See generally 17 A. L. R. 1399; 94 A. L. R. 321; Duffley v. McCaskey, 345 Mo. 550, 134 S. W. (2d) 62, 126 A. L. R. 853.

The considerations of public policy upon which these rules are based cannot be evaded by an arrangement between the life tenant and another whereby the life tenant allows taxes to become delinquent in order to enable such other person to acquire a tax title free from the interests of the remaindermen. Restatement, Property, § 149, pp. 488, 490, and 491, provides:

"When an estate for life and a future interest exist in the same land, and both interests become subject to sale for the collection of a sum of money, and, as between the owner of the estate for life and the owner of such future interest, this whole sum is payable by the owner of the estate for life, or out of his estate, then the owner of the estate for life, by acquiring the interests so sold, acquires no interest which he can assert in derogation of the said future interest.

\*     \*     \*     \*     \*     \*

"b. *Acquisitions direct and indirect.* The owner of the estate for life acquires 'the interests so sold,' within the meaning of this Section whether he buys directly and in his own name at the time when such interests are offered for sale, or buys through an agent, or other person acting in collusion with him, or later buys from a person who acquired on the original sale an ownership which, by him, could have been asserted in derogation of the future interests included in such sale. This disability of the owner of the estate for life makes likewise ineffective any acquisition of the interests so offered for sale, by any person who buys at the sale, under a collusive agreement with the owner of the estate for life by which such purchase is to benefit the owner of the estate for life."

The rule stated in this section of the Restatement finds substantial support in the decided cases. 3 Simes, Law of Future Interests, § 637, note 50; Boon v. Root, 137 Wis. 451, 119 N. W. 121; Fountain v. Starbuck (Mo.) 209 S. W. 900; Newport v. Hatton, 195 Cal. 132, 231 P. 987; First Congregational Church v. Terry, 130 Iowa, 513, 107 N. W. 305, 114 A. S. R. 443; Inman v. Quirey, 128 Ark. 605, 194 S. W. 858. While no case from this

jurisdiction precisely in point has been found, Hall v. Hall, 173 Minn. 128, 216 N. W. 798, enunciates the principle that parties cannot void a fiduciary disability by collusive arrangements with third persons. See also 24 Minn. L. Rev. p. 589.

Because of the likelihood that life tenants would be tempted to defeat the interests of remaindermen by collusion with third persons and the difficulty of proving the fraudulent character of such plans, courts have considered the relation of the parties as an important factor in deciding whether or not there was collusion. Where the relation between the life tenant and the purchaser at the tax sale is that of husband and wife, some courts apply a conclusive presumption (which is, in effect, a rule of law [Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557]) that fraud was practiced. First Congregational Church v. Terry, 130 Iowa, 513, 107 N. W. 305, 114 A. S. R. 443. The likelihood of there having been collusion where the relation is that of parent and child is, as a general rule, less than where the relation is that of husband and wife. The temptation to treat the remaindermen unjustly and the difficulty of proving collusion does, however, remain. The parent-child relationship as between a life tenant and a purchaser of the tax title is a factor to be given serious consideration in deciding if the breach of duty on the part of the one and the purchase by the other were the fruit of a collusive agreement between them. See Cain v. McGeenty, 41 Minn. 194, 42 N. W. 933; Barnard v. Seaman, 169 Minn. 409, 211 N. W. 473.

It is our opinion (1) that the life tenant could not acquire a title adverse to that of the remaindermen at the tax foreclosure sale and that such a purchase would be treated as a payment of taxes; (2) that the evidence amply sustains the trial court's finding that plaintiff was acting in collusion with the life tenant when she sought to obtain a tax title to the premises herein involved; and (3) that in view of the collusive agreement to defeat the interests of the remaindermen plaintiff is in no better position than the life tenant would be had the latter redeemed in her own name. We regard her attempt to acquire title as a payment of taxes in behalf of her mother.

It follows that plaintiff is not entitled to a lien against the reversionary interest in the property for the amount of the taxes paid by her. We so hold but without prejudice to her right to apply to the trial court for a lien against the life estate.

Affirmed.

Peterson, Justice (dissenting).

1. The whole basis of the decision below and of the majority here, in the last analysis, rests upon the proposition that it was the duty of Mrs. Edwards as the life tenant to pay the taxes, the nonpayment of which is the basis of the tax title. Assuming for the moment that there are grounds for holding that plaintiff acquired the tax title for Mrs. Edwards, which I think is absolutely without foundation in the record, and treating the case as one where Mrs. Edwards herself purchased at the tax sale and acquired the tax title, there is no basis for holding that it was her duty to pay the taxes. The findings are that the land was sold for the 1929 taxes; that Mr. Edwards died on January 24, 1930; and that the tax sale was held on May 11, 1931.

The 1929 taxes had become payable on the first Monday in January, 1930, in virtue of 1 Mason Minn. St. 1927, § 2074; Hoyt v. Chapin, 85 Minn. 524, 528, 89 N. W. 850. Taxes are a perpetual lien upon the land against which they are assessed until they are paid. Id. § 2117; Hacklander v. Parker, 204 Minn. 260, 283 N. W. 406. Hence the taxes were due and payable and had become a lien against the land during Mr. Edwards' lifetime and before Mrs. Edwards acquired her life estate.

A life tenant is not liable for taxes which accrued against the land prior to the time when he acquired his life estate. The grounds on which a life tenant is liable, absent, as here, a contractual obligation for taxes, interest on encumbrance, and ordinary repairs, is that equity apportions the burdens according to benefits. The life tenant is charged with such burdens, since he has the income and benefits during the time that such charges accrue. In Wilson v. Proctor, 28 Minn. 13, 15, 8 N. W. 830, 831, we held that the life tenant's duty is to pay the taxes upon a

homestead occupied by her "during the continuance of the homestead right." The life tenant is not liable for taxes that accrued prior to commencement of his estate. Such taxes are chargeable against the entire property, the principal and not the income. In re Babcock (1889) 115 N. Y. 450, 22 N. E. 263; In re Young (1896) 17 Misc. 680, 41 N. Y. S. 539, modified on other grounds in (1897) 15 App. Div. 285, 44 N. Y. S. 585, affirmed in (1899) 160 N. Y. 705, 57 N. E. 1129; Trimmier v. Darden (1901) 61 S. C. 220, 39 S. E. 373; note, 17 A. L. R. 1398. See Restatement, Property, § 129(h).

In In re Babcock, *supra,* the life tenants were given a life estate in certain real property under a will. Taxes had been assessed against the land, and the assessment rolls had been delivered to the aldermen for ascertainment of the amount of the tax and its extension upon such rolls. There, as here, the tax was assessed during the lifetime of the prior owner. The court held that the life tenants were not liable for the taxes, and that the same were payable as a debt of the testator under the statute permitting the payment of taxes as debts of the decedent, saying [115 N. Y. 452]:

"The sole question in the case is, therefore, whether such taxes constituted a liability of the estate. It is contended by the appellants that, inasmuch as current taxes, as between life tenants and remaindermen, are properly chargeable to the former, these taxes should not be included in the inventory of the debts of the estate. As between life tenants and remaindermen the former are undoubtedly chargeable with the payment of current taxes assessed after property has come into their possession (Deraismes v. Deraismes, 72 N. Y. 154); but the question here arises between remaindermen and executors as to assessments made during the life of the testator. In such case we think a different rule prevails, and the point to be determined is who, in such a case, is primarily liable to the city for the payment of such taxes. If they constituted a debt of the estate, it was undoubtedly the duty of the executors to include them in the inventory of liabilities, and pay

them from the personal property in their hands chargeable with the payment of such liabilities."

The fact that the decision here rests upon the erroneous supposition that it was the duty of the life tenant to pay the taxes which had become a subsisting lien against the property before the life estate began alone should compel a reversal.

Baldwin v. Zien, 117 Minn. 178, 134 N. W. 498, is not a satisfactory case. The opinion refers to the widow as the life tenant. She assented to the will and took a life interest in a leasehold and other property in lieu of her statutory rights as widow. This fact was emphasized. The taxes had accrued during the husband's lifetime and were due when the widow made her election. The rule is of course that a widow who elects to accept land which has been devised to her takes it subject to any encumbrances and liens which were upon it at the death of the testator. Nelson v. Brown, 144 N. Y. 384, 39 N. E. 355; 2 Underhill, Wills, § 748; 69 C. J. p. 1135, § 2433, note 9. In that view the widow as the life tenant was liable for the taxes as against the remaindermen. Some of the language in the opinion if considered apart from the context is susceptible of the construction that the life tenant is liable in any event for taxes that have accrued against the property during the lifetime of the testator. But that view is clearly erroneous. We ought now to clarify our holding in the Zien case, if that be necessary, and conform our rule to correct legal principles. So far as that case intimates that the rule is that the life tenant is liable for taxes against the property at the time the life tenancy began, the decision is contrary to the weight of authority, as the cases cited clearly show. A life tenant may be charged only with those taxes which accrue from year to year during the life tenancy. Such liability rests upon the same basis as that for interest on encumbrances. 1 Tiffany, Real Property (3 ed.) § 63, p. 90, note 10. The life tenant is not chargeable with interest which accrued before his possession. Such interest is charged against the entire estate. Hayward v. Plant, 98 Conn. 374, 119 A. 341; 17 R. C. L. § 29, p. 640,

note 18; annotation, 137 A. S. R. 661. Since life tenants and remaindermen are chargeable as between themselves ratably according to their several interests and benefits, the life tenant is not liable for a special assessment for permanent local improvements, whether levied before or after his tenancy began. Such assessments, which are but a form of tax, are apportioned according to equitable principles. Chamberlin v. Gleason, 163 N. Y. 214, 57 N. E. 487; 17 R. C. L. p. 638, § 28; 1 Tiffany, Real Property, § 63, p. 92, notes 14, 15. The rule announced by the majority is not defensible upon legal principles.

2. Furthermore, the life tenant's acquisition of an outstanding title became absolute for failure of the remaindermen to claim the benefit of the tax sale purchase. The remaindermen had an election of remedies—to affirm the purchase as for their benefit upon timely contribution of their proportionate share of the price paid or to repudiate the transaction in its entirety. They have chosen to repudiate the purchase as being absolutely void. Hence they have by their election entirely waived their right to the benefit of the purchase of the tax title.

Such a purchase by a life tenant is valid, but it is subject to the right of the remaindermen to claim the benefit thereof upon equitable conditions. A remainderman cannot claim the benefit of a purchase of an outstanding title by the life tenant unless he tenders or offers to contribute his proportionate share of the purchase price within a reasonable time. Cockrill v. Hutchinson, 135 Mo. 67, 36 S. W. 375, 58 A. S. R. 564; 17 R. C. L. § 30, p. 641, note 3. The same rule applies to cotenants. The cases relating to the rule as applied to cotenants are collected in an annotation in 17 Ann. Cas. 1171, where the rule is stated as follows:

"By courts taking the view that a purchase of property owned in common at a judicial or trustee's sale by one of the tenants accrues to the benefit of his cotenants, it is generally held that a cotenant, to avail himself of the benefits of such purchase, must contribute or offer to contribute to the expense thereof within a

reasonable time, and that if he fails to do so the title of the purchaser at such a sale becomes absolute."

The note quotes from Reed v. Reed, 122 Mich. 77, 79, 80 N. W. 996, 80 A. S. R. 541, to the effect:

"Before cotenants can take proceedings to secure the benefit of such purchase by another cotenant, they must do equity, namely, tender, or offer to contribute, their proportionate shares of the amount paid in purchase of these outstanding liens. * * * Cotenants desiring to share in such purchase must move promptly, that is, within a reasonable time. The cotenants in this case have not moved at all, except upon the theory that the purchase by the cotenant was absolutely void, and that they were not subject to contribution. They have neither done, nor offered to do, equity."

The remaindermen's right to claim the benefit of the purchase by the life tenant by offering to contribute his share of the purchase price is an equity only. It is a personal option, and not a right attaching to the estate. Randolph v. Vails, 180 Ala. 82, 60 So. 159. Hence it may be lost like any other personal right.

Where the remainderman does not claim the benefit of the purchase and contribute or offer to contribute his proportionate share of the purchase price within a reasonable time he is deemed to have repudiated the transaction and abandoned his right to claim its benefits. Cockrill v. Hutchinson, 135 Mo. 67, 36 S. W. 375. By taking the position that the purchase by the life tenant was absolutely void and refusing to recognize her lien, the remaindermen here are not in a position to claim its benefits. Here the remaindermen do not even ask that the life tenant's purchase be adjudged to be for their benefit. This is a repudiation of the purchase and prevents their having any claim to the life tenant's title. Hence the life tenant's purchase at the tax sale is free from their claims. Reed v. Reed, 122 Mich. 77, 80 N. W. 996; see, 14 Am. Jur., Cotenancy, §§ 58 and 59.

Plaintiff's lien for the taxes paid should have been allowed.

3. We are bound by the finding that plaintiff acquired the tax title in her own name and in her own right. That finding is sustained by the uncontradicted evidence that the purchase was made with plaintiff's money and the tax title was issued to her in her own name.

"When an action is tried by a court without a jury its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence." 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 411.

4. Plaintiff had a right to purchase the property at the tax sale. 1 Mason Minn. St. 1927, § 2130, provides:

"All persons, except as provided in § 931, may become purchasers at such sale. If the owner purchase, the sale shall have the effect to pass to him, subject to redemption as in this chapter provided, every right, title, and interest of any and every person, company, or corporation, free from any claim, lien, or incumbrance, except such right, title, interest, lien, or incumbrance as such owner may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made."

The rule is that as against others interested in the property one who is chargeable with payment of the taxes cannot allow the land to be sold, become the purchaser, and acquire a title by his own neglect of duty. Collusion in this connection simply means that one who is chargeable with the duty of paying the taxes and hence disqualified as against others interested in the property from purchasing free from their right to claim the benefit of the purchase in the manner stated above will not be permitted to acquire the title indirectly through an agent or other person under agreement to hold the title for him free from such claim. The law does not allow that to be done indirectly which it will not permit to be done directly. The test determinative of the fact of collusion is whether the purchase was for the benefit of the purchaser or the party chargeable with the tax.

Where the purchaser buys for his own benefit there can be no collusion. The finding that plaintiff purchased for her own benefit is conclusive of that proposition here.

In Equitable L. Ins. Co. v. Wright, 54 Iowa, 606, 7 N. W. 93, the question was whether one Butler, assignee of the purchaser at a tax sale, took free from plaintiff's mortgage. Wright was the owner, and he and Butler were close personal friends. The sale was made to one Smith. Butler advanced the money to procure the assignment of the tax sale certificate with full knowledge of plaintiff's mortgage under an agreement with Wright that he would not redeem. Wright paid the money to Smith and procured from him the assignment to Butler. After Butler acquired the tax title Wright occupied the property as his tenant. The facts in that case so far as concerns their legal effect cannot be distinguished from the instant one. The court held that Butler acquired a good tax title, saying [54 Iowa, 607]:

"We think the evidence fails to establish a fraudulent intention on the part of Butler to acquire the tax title and hold it for Wright, in order to defeat plaintiff's mortgage. * * * The friendship of Wright and Butler is no ground to presume fraud. It is a reason why Wright would prefer that Butler acquire the title under the tax sale, rather than another. * * * Wright's activity in procuring the assignment to Butler may be admitted. The reason of it may be readily seen in the friendship of the parties. It is no badge of fraud."

The court further held that, since the evidence did not show that Wright retained any interest in the property under agreement with Butler, the latter's tax title was good and divested the lien of plaintiff's mortgage.

The rule is well settled that a near relative of the owner or others interested in the property may purchase the same at a tax sale. Under statutes similar to ours the right to purchase by the owner's daughter, Thorington v. City Council, 88 Ala. 548, 7 So. 363; Busch v. Hall, 119 Iowa, 279, 93 N. W. 356; Storey v. Miles, 86 Neb. 827, 126 N. W. 517; son, Wilson v. Godfrey, 145 Iowa,

696, 124 N. W. 875; father, Langley v. Batchelder, 69 N. H. 566, 46 A. 1085; friend, Equitable L. Ins. Co. v. Wright, 54 Iowa, 606, 7 N. W. 93; and even stockholders of a corporation, Jenks v. Brewster (C. C.) 96 F. 625, has been sustained.

In Busch v. Hall, 119 Iowa, 288, 93 N. W. 359, the court said:

"A careful reading of the record has failed to convince us, however, that Daisy Hall was acting in any save her own interest. She was *sui juris*, and had a perfect right, if she did so, to procure title to the homestead by purchasing the tax title. That she bought it for herself is affirmatively proven. True, she had lived with her parents on the premises up to the time of her departure for Chicago about the 1st of November, 1897."

The language in Storey v. Miles, 86 Neb. 830, 126 N. W. 518, is similar:

"There is no privity shown to have existed between Ellen Gavin and her mother when the property was bought, and, while there may be some presumption of a concert of action from their relationship, it is rebutted by the proof. If Ellen Gavin became the true and *bona fide* owner of the property in her own right by her purchase, she might sell to whom she pleased. The distinction is clear between the facts in this case and in the cases cited. The principle of the former cases is sound, but it is not applicable here."

In Wilson v. Godfrey, 145 Iowa, 698, 124 N. W. 876, the distinction is clearly pointed out as follows:

"True, he was the son of the mortgagor and later, after the title had passed to him by tax deed, he became his father's sole heir. But he did not obtain the title to this property from or through his father, but from an independent source, and there rests upon him no obligation, legal or equitable, to yield his rights therein for the benefit of the mortgagee. Busch v. Hall, 119 Iowa, 288, 93 N. W. 356. Whether any moral obligation rests upon him in favor of the plaintiff is not a proper subject for our consideration. If there was anything in the record which tended

directly, or by fair implication, to show that the son took the tax title for or in the interest of his father, a different result could well be reached, but, aside from the mere fact of family relationship, there is nothing of the kind. Upon this fact alone no presumption of fraud or collusion is justified."

The rule laid down in First Congregational Church v. Terry, 130 Iowa, 513, 107 N. W. 305, 114 A. S. R. 443, that a husband or wife may not purchase the other's property at a tax sale rests upon considerations peculiar to the marriage relation. The rule does not apply to such purchases by a daughter or a son as the Iowa court held in the cases cited. The rule itself is not universally followed and was rejected by this court in Kampfer v. East Side Syndicate, 95 Minn. 309, 310, 104 N. W. 290, 291, where we said:

"It is not very clear when the plaintiff's husband was the lessee of the defendant, or whether the leasehold relation had terminated when the tax titles were acquired. But this is of very little consequence, since there is no restriction which bars a wife in this state from acquiring a title against property by reason of any relationship between the husband and others to which she had no further privity than in her occupancy of the premises as the wife of her husband and under the legal obligations and duties arising from the marital relation."

The fact that the mother acted as the plaintiff's agent in making some of the payments is not important. One who is disqualified from purchasing at a tax sale within the rule stated may act as the agent of a purchaser who is qualified. Thorington v. City Council, 88 Ala. 548; Jury v. Day, 54 Iowa, 573, 6 N. W. 893. In Wood v. Armour, 88 Wis. 488, 60 N. W. 791, 43 A. S. R. 918, where the parties were not in possession, the wife's purchase of the husband's property at a tax sale was sustained. The husband acted as her agent in making some of the payments. Speaking through Mr. Justice Winslow the court said [88 Wis. 491]:

"However much force this argument might have against a title acquired by Curtis Mann, or by a third person collusively for Mann's benefit, it has no force against Mrs. Mann, who was not in possession and was under no obligation to protect the title. No duty rested on her to pay the taxes on these lands, whether they belonged to her husband or to the plaintiffs. She had a separate estate, and if she chose to use a part of it in purchasing a tax title on these lands in good faith and for her own benefit, we know of no rule, in the present state of the law as to the property rights of married women, which would prevent her from doing so. The evidence showed, and the court rightly found, that after such purchase she went into possession of the lands in question, and held such possession until she conveyed the same to the defendant's grantor. The actual manual possession during this time was in tenants, but we think the possession of these tenants, under the facts, must be held to be the possession of Mrs. Mann. She received the rents and profits, built fences, repaired buildings, paid the taxes, and managed the property as her own. It is true that her husband acted as her agent in many of these matters, but it is entirely competent for the husband to so act in the transaction of his wife's separate business, and we do not see how this is to prejudice the wife's rights."

That the mother defaulted knowing that the daughter would purchase does not affect the latter's rights as purchaser at the tax sale. Equitable L. Ins. Co. v. Wright, 54 Iowa, 606.

5. No fraud was practiced by plaintiff on the remaindermen. The tax judgment was recovered, the sale held, and notice of expiration served in strict conformity to the statutes regulating such matters. No claim is made to the contrary. The defendants were permitted to show that no personal service of the notice of expiration of redemption was given by the life tenant to the remaindermen. Although the evidence showed that only the mother failed to notify the remaindermen, the court below found that neither plaintiff nor her mother gave such notice. The statute does not require that such notice be given. The evidence and the

finding were irrelevant. Reimer v. Newel, 47 Minn. 237, 49 N. W. 865, 867. In the cited case the defendant was the surviving husband and administrator *c. t. a.* of his deceased wife, who was the mortgagee. The plaintiffs were the widow and grantee of the heirs at law of the mortgagor, who covenanted to pay the taxes. The defendant caused the property to be assessed in his name. He purchased at the tax sale and caused a notice of expiration to be issued directed to himself. The sheriff made a return that he could not find defendant in Hennepin county. Service was then had by publication. There was no personal service on plaintiffs, although they were all present in Hennepin county. It was held that the proceedings conformed to the statute; that the notice of expiration was properly directed to defendant as the person in whose name the property was assessed; that, since the statute did not so require, it was not necessary to serve others interested personally although that could have been done conveniently; that defendant was not bound to protect the title and interest of the plaintiffs; and that defendant acquired a good and valid tax title. Mr. Justice Mitchell pointed out that our statute prescribes a rule to which effect must be given regardless of holdings in other jurisdictions, where statutes are different, saying [47 Minn. 244]:

"Neither the mortgagee nor her administrator had ever gone into possession of the mortgaged premises. Defendant purchased at the tax sale in his own name individually, and not as administrator. Conceding, in the language of counsel, 'that there is substantial identity of defendant and mortgagee in this case,' there was nothing to prevent him from acquiring against the mortgagor or his successors in interest a tax title on the premises. Whatever may be the rule in other jurisdictions, or whatever may be thought of the policy of permitting a mortgagee in any case to acquire, as against the mortgagor, a tax title on the mortgaged premises, there can be no doubt but that, under our statute, this may be done where, as in this case, the mortgagee is neither

legally nor equitably bound to protect the property against the sale or the taxes for which the sale is made."

In the instant case the daughter was not bound to pay the taxes nor was she bound to protect the estate and title of the remaindermen. There was rigid compliance with the statute. Therefore she acquired a good and valid tax title. The instant case cannot be distinguished from Reimer v. Newel, 47 Minn. 237, 49 N. W. 865.

"Fraud cannot be predicated on an act which the law directs or authorizes." 3 Dunnell, Minn. Dig. (2 ed.) § 3831, cases note 74. Here everything that plaintiff did was authorized or directed by the governing statute. The case of Baart v. Martin, 99 Minn. 197, 108 N. W. 945, 116 A. S. R. 394, is not in point. The question there was whether proceedings for the registration of a title were valid as against plaintiff's mortgage. The mortgage was foreclosed under forged power of attorney, although there was then no default. The property was bid in in plaintiff's name and then a deed from plaintiff to one Carl was forged. The registration was based on Carl's title, which was based on the two mentioned forgeries. There was a finding that the clerk did not mail a copy of the summons on time as required by law. Plaintiff was not made a party or named in the registration proceedings because it was made to appear that he had no interest in the property by the foreclosure based on the forged power to foreclose and forged deed to Carl. The court held that even though the proceedings were in legal form the decree was the result of fraud practiced by the parties whereby it was made to appear that plaintiff had no interest in the property, in consequence of which he was not served as required by the statute. In the instant case all the proceedings were in strict conformity to law. The remaindermen were given the notice which the law requires. To say that the proceedings were fraudulent is to say that the statutes which authorize and direct them are fraudulent.

6. The daughter's tax title was not derived from the life tenant or the remaindermen. The tax title was entirely destructive of

any rights which they may have had. A tax title is not derived from the former owner of the land, but is a new and original title from the state as sovereign in fee entirely disconnected with previous titles, which is paramount as against the world and bars all other titles, rights, estates, interests, and liens. Hacklander v. Parker, 204 Minn. 260, 283 N. W. 406. See 61 C. J. p. 1308, § 1828, notes 41-43.

In Newby v. Brownlee (C. C.) 23 F. 320, it was held that the purchaser at a tax sale got a good title as against the remainder-men. It was pointed out that neither the taxing authority nor the purchaser at the tax sale is concerned with the question of whether a life tenant or another has the duty as between several owners to pay the tax. The court said [23 F. 322]:

"There is nothing in the statutes of Kansas, nor in the theory of taxation, which recognizes the taxing of any particular estate or interest in land. It is the land itself that is taxed, and it matters not what may be the condition of the title or who may be the owner; unless it comes under one of the exemptions named in the statutes, it is subject to its burden of the public revenue. Blue-Jacket v. Commissioners, 3 Kan. 299, 347; [Commrs. of] Miami Co. v. Brackenridge, 12 Kan. 114.

"The question as to who shall pay the tax is quite another thing, and is a matter with which the taxing power has no concern, nor has the party buying the land at the tax sale any concern therein, unless the duty rests on him to pay the taxes. It seems to be settled by the decided cases that the tenant for life of real estate must pay the taxes, if there is any income to pay them with. Peirce v. Burroughs, 58 N. H. 302; Clark v. Middlesworth, 82 Ind. 240; Johnson v. Smith, 5 Bush. (Ky.) 102; Prettyman v. Walston, 34 Ill. 175, 192; 1 Washb. Real Prop. (3 ed.) 112; Pike v. Wassell, 94 U. S. 711, 714, 24 L. ed. 307. In the last cited case, the supreme court held that if the life-tenant failed to pay the taxes, the children of the person whose estate had been forfeited, being the heirs apparent, may take the proper proceedings to enforce that duty on the tenant. But suppose the

heirs fail to enforce this duty on the tenant, and the property is sold for the tax, and a stranger bids it off; certainly no one would assert that it in any way concerned him, or affected his title under the tax sale. This defendant, Brownlee, was not the tenant, nor did he hold under the tenant, nor was he under any obligation to pay off these taxes, nor was he concerned in the confiscation proceedings. He appears to have been a stranger to the whole transaction, and as such bought this land at tax sale."

In Watkins v. Green, 101 Mich. 493, 60 N. W. 44, it was held that whatever the rights and remedies of the life tenant and the remaindermen may be *inter se,* a purchaser at a tax sale gets a good title as against all of such parties.

It seems to me that there ought to be a reversal and a new trial. Prejudicial irrelevant evidence was received. The court below misconceived the rules of law applicable, in consequence of which its findings and conclusions rest on fundamental error. A new trial seems to be the only corrective.

STONE, JUSTICE (dissenting).

I concur in the theory of Mr. Justice Peterson's dissenting opinion and in his conclusion that there should be a new trial of all the issues.

As to Baldwin v. Zien, 117 Minn. 178, 186, 134 N. W. 498, 501, my submission is that the proposition asserted in the concluding paragraph of that decision is erroneous. It reads thus:

"The taxes were due at the time of the testator's death, and as between the life tenant and the remainderman the life estate must carry the taxes. Therefore the order directing their payment out of the income from the life estate was right."

In this state taxes on realty do not become a debt of the owner. They take effect *in rem* as a lien on the property. As between life tenant and remainderman, they should be so considered. I see no reason why a tax lien, which accrued during the lifetime of the testator, should not be put in the same category as other liens similarly created, and charged against the whole estate

rather than against that of the life tenant alone, when it comes to apportioning the burden between life tenant and remainderman.